FALL RIVER GAS WORKS COMPANY vs. BOARD OF GAS AND
ELECTRIC LIGHT COMMISSIONERS.

Suffolk. December 11, 1912. — May 23, 1913.

Present: HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Corporation,* Public service. *Gas and Electric Light Commissioners. Gas
Company.*

Review by HAMMOND, J., of the legislation leading up to R. L. c. 109, § 24, making
it necessary for certain public service corporations to secure the approval of
certain appropriate boards or commissions before issuing capital stock or bonds,
and a definition of the powers thereby given to such boards and commissions.

It is not within the power of the board of gas and electric light commissioners to
dismiss an application, made under R. L. c. 109, § 24, by a gas company for
approval of an issue of additional capital stock to meet liabilities incurred in in-
creasing the efficiency or value of the plant, merely because at the time when such
liabilities were incurred the company had on hand a surplus of undivided profits
sufficient to meet such liabilities, which before making the application it law-
fully distributed as dividends among its stockholders.

Where a gas company, when having a surplus of net earnings on hand, incurs
liabilities for expenditures made in increasing the efficiency or value of its plant
which are less than the amount of such surplus, and then distributes the surplus
among its stockholders in extra dividends and issues additional capital stock
for public sale in a sum not greater than the increase in the value of the
plant caused by such expenditures, the proceeds of which stock it uses to
meet the liabilities, such issue of capital stock is not an issue of a stock divi-
dend in violation of R. L. c. 109, § 20.

HAMMOND, J. The petitioner alleges in substance that the
respondent board, hereinafter called the board, acting under
R. L. c. 109, § 24, upon the application of the petitioner, herein-
after called the company, to the board for its approval of a pro-
posed issue of additional stock, dismissed the application, being
moved thereto by an erroneous view of the law; and prays that
a writ of certiorari may issue to the end that the error may be
corrected and the board directed to act upon the application in
accordance with law. The board filed an answer in which was a
return setting forth the record of its proceedings. By a reserva-
tion all questions of law arising upon the pleadings are before us,
such entry to be made as law and justice may require.

There is little, if any, dispute about the facts. They are set
forth in the return as follows:

"This is an application by the Fall River Gas Works Company for the approval of an issue of eleven hundred and fifty (1,150) shares of additional capital stock, of the par value of one hundred dollars each, at a price of two hundred and twenty-five dollars a share, as determined by the directors, for the payment of the company's obligations already incurred for construction and for future additions to plant.

"On December 31, 1911, the company had outstanding promissory notes amounting to $200,000, and it is to the payment of these notes and to proposed subsequent expenditures of about $40,000 for new plant that the proceeds of the new stock named in the company's petition are to be applied. Between June 30, 1904, and December 31, 1911, the company's total expenditures for additions to plant were $409,045.16. Of this amount, $154,192.27 was expended prior to June 30, 1906. In August of that year, upon the application of the company for the approval of an issue of 1,150 shares of new stock to meet the cost of additions to its plant which had been completed and was included in its promissory notes on June 30, the board approved of the issue of 550 shares at the price of $185 per share and required the proceeds, amounting to $101,750, to be applied to the payment and cancellation of an equal amount of the notes. The board stated, as its reason for imposing this limitation on the number of shares then to be issued, that there were 'available funds for the payment of a large portion of this debt.' The notes outstanding on June 30, 1906, amounted to $217,000. The new stock was issued in October and November, 1906.

"During the period covered by the plant expenditures stated above, the operating profits amounted to $1,085,763.06. The regular dividends, at the rate of 10 per cent prior to June 30, 1908, and 12 per cent annually thereafter, required $552,050, leaving for net earnings above such dividends $533,713.06. These net earnings exceeded by $226,417.90 the cost of the additions to plant after applying thereto the proceeds of the stock approved in 1906. Interest payments during the same time amounted to $32,038.51 and other minor charges to $27,467.45. During this period the company, in addition to the dividends above referred to, declared two extra dividends, one of 20 per cent in July, 1907, and one of 15 per cent in December, 1910, requiring for

this distribution the sum of $241,500. The notes payable at the close of the year 1911 were within about $40,000 of the amount required for the extra dividends described, and the conclusion seems irresistible that, but for the declaration and payment of these extra dividends, these notes would not now exist."

Shortly stated, the facts in substance are that the company after paying dividends at the rate of ten or twelve per cent per annum, had remaining as profits an amount exceeding the outstanding obligations incurred in making the addition to the plant, and that instead of applying these profits to the discharge of these obligations it distributed them among its stockholders in the form of two extra dividends of fifteen and twenty per cent respectively.

Upon this showing the board dismissed the petition, stating the reason for its action in the following language:

"Section 20 of chapter 109 of the Revised Laws provides that no gas light company 'shall declare any stock or script dividend or divide the proceeds of the sale of stock or script among its stockholders.' If the outstanding notes were issued for the express purpose of providing for these dividends, to issue stock for their payment would be a plain violation of this provision. Where net earnings are of such volume that they may readily supply the funds for all needed additions to plant, but the company, rather than so apply them, divides all these earnings among its stockholders and provides for additions by outstanding loans to be thereafter capitalized, the prohibition of the statute, if strictly construed, may perhaps be avoided. But by the persistent pursuit of such methods it is obvious that through a maintenance of prices necessary to produce such earnings, a company not only may compel the public to contribute all the additional investment required for the business, but also may have this contribution permanently represented by capital stock. Such a course, in the judgment of the board, is not only contrary to the public interest, but, even if it be not an actual evasion of the law cited, is a clear violation of its spirit and of the policy it is intended to declare.

"At the close of the year 1911 the company's accounts receivable amounted to nearly $50,000 and it had on hand upwards of $30,000 of supplies and $87,000 in cash. There is every reason

to believe that the company's income will afford ample provision, in addition to its regular dividends, for the plant additions proposed subsequent to December 31, 1911, and render a new issue of stock unnecessary for that purpose.

"Whenever, because of increased costs not now apparent or of future reductions in the price of gas, profits shall appear inadequate for the reasonably necessary purposes of the corporation, the question of a new stock issue will be entitled to further consideration."

It nowhere appears that the board questioned the propriety or reasonable necessity of the additions to the plant made or to be made, or that the amount expended and to be expended therefor represents their cost and real value; and the fair construction of the answer and return is that, making no question as to these matters, the board dismissed the petition solely upon the grounds set forth in the return. And the question is whether there was error of law in dismissing the petition on those grounds.

R. L. c. 109, § 24, so far as material to this inquiry, is as follows: "Railroad corporations and street railway companies shall issue only such amounts of stock and bonds, coupon notes and other evidences of indebtedness payable at periods of more than twelve months after the date thereof, and gas and electric light companies, corporations established for and engaged in the business of transmitting intelligence by electricity, aqueduct and water companies, shall issue only such amount of stock and bonds, as the board of railroad commissioners in the case of railroad corporations or street railway companies, the board of gas and electric light commissioners in the case of gas or electric light companies, may from time to time vote, or the commissioner of corporations in the case of the other corporations hereinbefore specified may from time to time determine, is reasonably necessary for the purpose for which such issue of stock or bonds has been authorized. Said boards or commissioner shall render a decision upon an application for such issue within thirty days after the final hearing thereon. Such decision shall be in writing, shall assign the reasons therefor, shall, if authorizing such issue, specify the respective amounts of stock or bonds, or of coupon notes or other evidences of indebtedness as aforesaid, which are authorized to be issued for the respective purposes to which the

proceeds thereof are to be applied, shall, within seven days after it has been rendered, be filed in the office of the board or commissioner rendering it and a certificate of the vote of the board or of the decision of the commissioner shall, within three days after such decision has been rendered and before the stock or bonds or coupon notes or other evidences of indebtedness as aforesaid are issued, be filed in the office of the secretary of the Commonwealth, and a duplicate thereof delivered to the corporation which shall enter the same upon its records. A company which is within the provisions. of this section shall not apply the proceeds of such stock or bonds or coupon notes or other evidences of indebtedness as aforesaid to any purpose not specified in such certificate."

The case turns upon the true construction of this statute. The contentions of the petitioner are (1) "that the board has no general jurisdiction to refuse to approve an issue of capital stock merely upon the general ground that in the board's opinion such issue is 'contrary to the public interest,'" or (2) "upon the specific ground that the company could secure or could have secured from earnings the funds sought to be thereby raised," and still further (3) that "the issue of additional capital stock as proposed for its fair market value in cash to secure funds to pay for additions to plant which might have been paid for by earnings, which earnings were used in part for extra dividends to stockholders, is not . . . a stock dividend and is not contrary either to the letter or to the spirit and policy of the statutory prohibition of stock dividends."

The contention of the Attorney General, who appears for the board, is that the board is vested with a discretion to refuse to approve an issue of stock if it does not "deem such issue reasonably necessary to secure the funds to meet the expenses set forth in the application, notwithstanding that the purposes for which such expenses have been incurred or are to be incurred are lawful, and that the proceeds of the issue applied for would yield no more than is reasonably necessary in amount to meet such expenses," or in other words, that the board has "jurisdiction to determine not only whether or not the amount to be raised by an issue of stock or bonds is reasonably necessary for the purposes indicated, but also whether or not the issue itself is reasonably necessary

therefor," or, stated in another way, that "the words 'reasonably necessary' are to be construed as applying to the issue of stock or bonds as well as to the amount to be raised thereby."

It becomes necessary to look into the legislation leading to this statute, and, since the provision as to gas companies in the statute is closely connected with similar provisions as to certain other public service corporations, the examination should be correspondingly extensive, so far at least as the provisions as to these other corporations tend to throw light upon the interpretation to be given to that applicable only to the gas companies.

In the early statutes authorizing the increase of stock not much was said about the manner of the issue. It could be issued by a vote of the corporation provided the issue was for the purposes of the charter and did not exceed the amount of the capital authorized by law. St. 1830, c. 53, § 3. Rev. Sts. c. 38, § 11. Then came a provision that no share should be issued for a less sum, actually paid in cash, than the par value of shares first issued. Sts. 1851, c. 133, §§ 8, 16; 1858, c. 167; 1859, c. 104. Gen. Sts. c. 61, §§ 6, 9. Gas companies could increase their stock at will for the purposes of the business for which they were chartered, subject only to the conditions that the stock should not exceed the amount fixed by the charter or by a general statute, as the case might be, and that the payment for the stock should be made in cash to the amount of the par value. Sts. 1851, c. 133, §§ 8, 16; 1855, c. 146. Gen. Sts. c. 61, §§ 6, 15, 18.

Afterwards from time to time the provisions as to the issue, distribution and disposal, by sale or otherwise, of the additional stock were modified. See as to aqueduct companies, St. 1875, c. 161; Pub. Sts. c. 110, § 7; as to railroad corporations, Sts. 1871, c. 392; 1874, c. 372, § 46; 1878, c. 84; Pub. Sts. c. 112, §§ 58, 59; St. 1893, c. 315; as to street railway corporations, Pub. Sts. c. 113, § 16; St. 1893, c. 315; as to gas companies, St. 1873, c. 39; Pub. Sts. c. 106, §§ 36, 39, 40, 41; and as to corporations where there is no other special provision made, St. 1870, c. 179; Pub. Sts. c. 105, § 20, and c. 106, § 34. There long has been also a provision that no railroad corporation, telegraph or gas light company should declare any stock dividend or divide the proceeds of sale of stock among its stockholders. Sts. 1868, c. 310, § 1; 1871, c. 389; 1874, c. 372, § 177; Pub. Sts. c.

105, § 18, and c. 112, § 61.  (St. 1894, c. 450;  R. L. c. 109, § 20; St. 1903, c. 437.)

Although by these and other statutes considerable restraint was imposed upon the issue of additional stock by public service corporations, to the end that there should be no stock watering and that the public should not be correspondingly burdened, still, up to 1894, there does not seem to have been any provision for any general supervision by a public board over the propriety or necessity of the issue.  That question was left to the judgment of the officers and stockholders of the corporation to be exercised under certain penalties in case any of the restraining conditions were violated.

In this state of the law the Legislature of 1893 appointed a joint special committee to sit during the recess and to consider among other things the expediency of such amendments of our general laws relating to all corporations except municipal "as will better protect the interests of the public as affected by corporations, and of stockholders and bondholders therein," and to report in print to the then next Legislature.  The committee reported in 1894 (Sen. Doc. No. 67), recommending after careful consideration the passage of certain bills, twelve in all, appended to the report;  and in accordance therewith three bills relating to the issue of stock by service corporations were passed, namely, St. 1894, cc. 450, 452, 462.  The first provides that a gas company or electric light company "shall . . . issue only such amounts of stock and bonds as may from time to time, upon investigation by the board of gas and electric light commissioners be deemed and be voted by them to be reasonably requisite for the purposes for which such issue of stock or bonds has been authorized."  The board are to file a certificate specifying the amount to be issued and the purposes for which it is issued, and the proceeds shall not be applied to any other purpose.  Penalties for violation of the act are imposed, and jurisdiction in equity is given to enforce the orders of the board.  The second statute applies to corporations engaged in transmitting intelligence by electricity and to aqueduct and water companies and, *mutatis mutandis,* is the same as the first except that the question of necessity is to be settled by the commissioner of corporations. And so of the third statute (applicable only to railroad and street railway companies), except that the board of railroad commis-

sioners is to judge of the necessity. Of these three bills thus adopted by the Legislature, being those numbered five, six and seven in the report, the committee say that they "are designed to accomplish the intelligent supervision, by competent officials, of the issue of stock and bonds by the class of corporations named in such bills, in order that the stock and bonds so by them issued may be confined to the amount reasonably necessary for the accomplishment of the purposes authorized by the Legislature." As to the general reasons for proposing the legislation recommended in the report, the committee speak as follows:

"To the end that reasonable dividends, interest and profits should be paid only upon a sufficient capital to properly conduct the business of *quasi*-public corporations, the committee recommends the passage of the bills heretofore referred to.

"The Legislature has many times enacted laws providing for the supervision of the issuance of capital stock and bonds, and with good results. The committee is of the opinion that such supervision, more freely exercised, while it may not wholly prevent overcapitalization by forms not now anticipated, will tend to bring the corporations to which the bills apply into a compliance with the spirit and intention of our laws; and while the Legislature may at any time provide by law for an increase of capital stock and bonds for any purpose it sees fit, the committee feels that in order to secure a more careful and thorough investigation of the application of such increase, any such increase should be subject to examination by some expert authority of the Commonwealth, and such the various boards or commissions are intended by our laws to be."

R. L. c. 109, § 24, the statute under which the board acted in this case, is in substance a consolidation of these three statutes of 1894, the words "reasonably necessary" being substituted for the word "requisite."

What are the powers of the board under this section? It is to be premised that this statute has nothing to do with changing the limit of stock as fixed by law either in a special charter or by a general law. It deals only with the issue of stock within the limit. It cannot go beyond that limit, although it may reach it. If, for instance, any one of the corporations named in this section desires to increase the limit already fixed by its charter or a gen-

eral law, it can find no relief under this statute. (See in this connection St. 1874, c. 29, § 15, — re-enacted in Pub. Sts. c. 113, § 15, — as an example of a statute providing for such an increase beyond the limit theretofore authorized in the case of a railroad corporation.)

It is also to be noted that within its sphere of action the statute applies to every issue of stock, whether it be the first or any subsequent issue, and is absolute. Of St. 1894, c. 450 (re-enacted in this statute), Knowlton, J., in *Attorney General* v. *Massachusetts Pipe Line Gas Co.* 179 Mass. 15, 20, 21, says: "The act is not directory, merely, but is, so to speak, jurisdictional. It prescribes the terms on which and the method by which . . . [a gas corporation] . . . can issue capital stock divided into shares. As to the right of a corporation to fix the amount of its stock and to issue stock, it prescribes a prerequisite on which the right to act depends. We think that the elaborate requirements of § 1 of this statute were intended to be fundamental, underlying the entire statutory authority of such corporations to issue stock. *Scovill* v. *Thayer*, 105 U. S. 143. The fact that the special charter of the defendant corporation fixes the capital stock at $1,000,000, with authority to increase it, does not give the corporation authority to issue any stock without a vote of the commissioners under the section just referred to . . . The amount fixed by the charter was the amount that might be issued only under the authority of the commissioners; without their authority no amount could be issued."

Before the St. of 1894, c. 450, if a gas company desired to issue additional stock to an amount not in excess of the capital stock authorized by law, it determined the question whether the money to be raised was needed for purposes for which stock should issue, and also how much should be needed, and having so determined, it sold at auction stock enough to raise that amount; and there was no supervision over these matters by a public board.

In view of the legislation leading up to St. 1894, c. 450, and of the obvious reasons, so far as respects the public served by these corporations, and reasons somewhat different but equally obvious so far as respects the bondholders and stockholders, for a change which should result in an authoritative and more efficient enforcement of the law as to the issue of stock, we are of opinion that

it was the manifest purpose and legal effect of this statute, re-enacted in R. L. c. 109, § 24, to change the whole method of the issue of stock by the public service corporations therein named, and to take away from such corporations and to vest in public officers the right to determine the general question of the reasonable necessity of the issue. And the decision of the board is final unless based upon some error of law.

But in acting upon an application the board is engaged in the performance of a *quasi* judicial function, and should be moved only by considerations logical to the issue and not inconsistent with the rights of parties. It is not to be assumed that in vesting in the board the decision of the general question the Legislature intended that the usual principles upon which stock could be properly issued were to be changed. The general question as to the necessity of the issue for the purposes for which it was lawfully authorized was the same and should be decided upon the same considerations, whether decided in the first case by the corporation itself (and, if need be, by the court afterwards), or by the board. There is no change in the question nor of the principles upon which it is to be decided. The only change is in the party deciding it.

By what principles is the board to be guided in performing this function? It is not compelled to take for granted that the facts stated in the application are true. It may investigate and find the facts for itself.

It is the duty of a public service corporation to have its plant large enough to perform the service for which it was established, and it has a corresponding right to have such plant fairly capitalized. It is its duty to keep up the plant, whether by repairs or otherwise, out of its earnings, and this duty is superior to its right to distribute its earnings in dividends. If the time comes when the plant of the corporation is insufficient for the performance of its corporate duties to the public, then it is subject to the same duty, and is invested with the same right with reference to the additional plant as in the case of the original plant — the duty to increase the plant and the right to capitalize fairly the value of that increase.

When the corporation has performed all its duties, and by its fortunate situation, good management, or any lawful conduct

has remaining a surplus of earnings, it has the right to distribute this surplus among its stockholders in dividends. As between the public and the corporation the earnings belong to the corporation. In performing its full duty to the public and others it has done what it was chartered to do, and is entitled to the profits of the business for which it was chartered. If there be any reserved power in the charter whereby the profits can be reduced or the charter revoked, of course that power may be invoked if it appear that the charter is too favorable to the corporation. And in the case of a gas company the profits may be reduced by an order lowering the price of gas, if such order seems just and reasonable. R. L. c. 121, § 34. The relations between a public service corporation and the public to serve whom it is chartered are not those of a partnership, but rather those of independent contracting parties. The public may demand proper service and with that demand the corporation must comply. The company may demand fair compensation for this service and with that demand the public should comply. The corporation can have no share in the benefit to the public, nor can the public have any share in the net profits available for dividends.

Upon the question whether there shall be an issue of additional stock to meet liabilities incurred in increasing the efficiency or value of the plant, the amount of undivided profits on hand at the time the liabilities were incurred or the expenditures made which thereafterwards and before the application to the board have been lawfully distributed as dividends is entirely immaterial. We see nothing to take this case out of the general rule.

Nor is this proposed increase a violation of the statutory provision against the issue of a stock dividend. It certainly is not in form such an issue. Nor is it in substance. The sum raised goes to increase the value of the plant, for the purposes of the business for which the petitioner was incorporated; and that is none the less true even if these expenses could have been paid by the funds since lawfully distributed as dividends.

It follows that in the decision to dismiss the petition upon the grounds stated in the record there was error in law.

*Writ to issue.*

*A. A. Ballantine,* for the petitioner.

*F. B. Greenhalge,* Assistant Attorney General, for the respondent.