MORGAN G. BULKELEY & others *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY & others.

Suffolk.   December 27, 1913. — January 9, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & DE COURCY, JJ.

*Public Service Commission. Corporation,* Issue of shares or evidences of indebtedness. *New York, New Haven, and Hartford Railroad. Convertible Debentures.*

The public service commission, established by St. 1913, c. 784, § 1, are a *quasi* judicial tribunal, and, when they are asked by a railroad corporation to approve a certain issue of evidences of indebtedness, their power of approval is not confined to the amount of the issue, and it becomes their duty to determine as matter of law whether they are empowered to approve such an issue as is proposed by the corporation.

The public service commission established by St. 1913, c. 784, § 1, have no power to approve the issue by a railroad corporation of evidences of indebtedness exchangeable for stock of the corporation at par at the option of the holder for a period of ten years beginning five years after their date.

Discussion by RUGG, C. J., of the provision of St. 1913, c. 784, § 15, that "a railroad corporation may issue shares of capital stock, bonds, notes or other evidences of indebtedness, for the purpose of funding its floating debt, or for any other lawful purpose," as limited by other provisions of the same chapter interpreted in the light of the history of the statutory development of the public regulation of issues of stock by railroad corporations in this Commonwealth.

BILL IN EQUITY, filed in the Supreme Judicial Court on October 25 and amended on November 17, 1913, by certain stockholders of the New York, New Haven, and Hartford Railroad Company under St. 1913, c. 784, § 27, praying the court to annul or review, modify or amend, an order made by the public service commission established by that chapter approving a proposed issue by that railroad company of evidences of indebtedness amounting to $67,552,000 and also approving the issue of 675,520 shares of the capital stock of that company as asked for in the applications of that company to the commission, which are described in the opinion.

The case was heard by *Sheldon,* J., who reserved and reported it for determination by the full court, to be given the precedence provided for in the last sentence of § 27 of St. 1913, c. 784.

*E. B. Robbins* (of Connecticut) *& C. F. Choate,* for the defendant the New York, New Haven, and Hartford Railroad Company.

*N. Matthews & J. F. Jackson,* for the plaintiffs.

RUGG, C. J.   The New York, New Haven, and Hartford Railroad Company applied to the public service commission (established by St. 1913, c. 784, § 1) for approval of a proposed issue of evidences of indebtedness to an amount of $67,552,000 for the purpose of funding floating debts, purchasing new equipment, and its other uses.   The issue was authorized by vote of the stockholders.   These proposed evidences of indebtedness were to be payable twenty years after date, to bear interest at the rate of six per cent per annum, and to be convertible at the option of the holders into shares of capital stock at par at any time not less than five nor more than fifteen years after date.   In the same petition the company also applied for approval of a proposed issue of its capital stock at par to the amount of 675,520 shares, for the purpose of being able to comply with the convertible feature of these evidences of indebtedness.   The commission, one commissioner dissenting, made an order of approval of the issue of the evidences of indebtedness with the convertible feature and the issue at par of the requisite number of shares of stock to pay them according to the terms of the option of conversion into stock.

This order is assailed on the ground, among others, that the commission had no legal power to approve the issue of evidences of indebtedness (called for convenience convertible debentures) exchangeable for stock at par at the option of the holder for a period of ten years beginning five years after their date.

The commission is a *quasi* judicial tribunal.   Its power is to approve the issue of the proposed convertible debentures, and not merely its amount.   When application is made to it for approval, it becomes its duty to determine whether as matter of law it is empowered to approve such an issue as is proposed by the corporation.

The approval of the issue of convertible debentures containing the option of exchange for stock at par necessarily involves the further approval of an issue of shares of stock at par in order that the company may be in a position to carry out its contract set forth in the debentures.   It has been argued that the order to

issue stock is distinct and separable from the approval of the debentures with the convertible stock feature.   Perhaps the right to demand payment of the principal of the obligation may be separable from the right to convert it into shares of capital stock under some circumstances.   See *Pratt* v. *American Bell Telephone Co.* 141 Mass. 225, and *Bratten* v. *Catawissa Railroad,* 211 Penn. St. 21.   But a different situation exists under the statutes of this Commonwealth, and in the light of them this argument is not sound.   The approval of the commission is required for the issue of "any shares of capital stock or any bonds, notes or other evidences of indebtedness payable at periods of more than twelve months after the date thereof."   St. 1913, c. 784, § 16.   Under such a statute the approval by the commission of the issue of convertible debentures, if it does not involve and carry along with it the approval of a stock issue of a sufficient number of shares of stock to satisfy the option contained in the bonds, at least imposes upon the commission by irresistible implication the duty to approve such an issue.   After a public board has approved the convertible feature of such a debenture, and thereby has led the subscribing public to rely upon this stipulation in the contract of the company, approval of the issue of the stock required to meet this stipulation cannot be withheld.   Justice to the holders of the debentures forbids such a possibility.   Therefore the order of the commission must stand or fall as a whole, and the question recurs whether the statutes of this Commonwealth authorize the issuance of convertible debentures as evidences of indebtedness.

It is to be observed that the answer to this question has nothing whatever to do with the general power of a corporation, unrestricted by any public supervision, to issue convertible debentures, *Pratt* v. *American Bell Telephone Co.* 141 Mass. 225, *Lisman* v. *Milwaukee, Lake Shore & Western Railway,* 161 Fed. Rep. 472, nor with the right or duty of public boards created under other statutes with different powers, to authorize the issuance of such securities, *Laird* v. *Baltimore & Ohio Railroad,* 121 Md. 179, nor with the issuance of such securities in accordance with special statutes, *John Hancock Mutual Life Ins. Co.* v. *Worcester, Nashua & Rochester Railroad,* 149 Mass. 214.   *Parkinson* v. *West End Street Railway,* 173 Mass. 446.   The interpretation of our statutes alone is involved in this inquiry.

The history of statutes regulating the issuance of stock by corporations is summarized in *Fall River Gas Works* v. *Gas & Electric Light Commissioners,* 214 Mass. 529, 534, with ample reference to the several acts.  In the early years very much was left to the determination of the stockholders and directors, and the public exercised little control.  But by St. 1870, c. 179, it was provided that increase of capital stock of corporations should be offered at par to stockholders, and that stock not so taken should be sold at public auction at not less than par for the benefit of the corporation.  By St. 1871, c. 392, the right of subscription at par by stockholders was repealed as to railroad corporations, the cash market value of whose shares exceeded par, and all shares of such corporations were required to be sold at public auction at not less than par.  This provision was continued in the codification of the railroad laws.  St. 1874, c. 372, § 46.  By St. 1878, c. 84, the directors of a railroad corporation were permitted to allow its stockholders to subscribe for increase of capital stock at par, and were required to sell whatever stock was not so taken by subscription at public auction at not less than par for the benefit of the corporation.  These provisions were continued in substance in Pub. Sts. c. 112, §§ 58, 59.  An important step in public supervision of stock issues of railroad corporations was taken by St. 1893, c. 315, which required that, in the event of an increase of capital stock, the new shares should be offered proportionately to stockholders "at the market value . . . at the time of increase . . . [to] be determined by the board of railroad commissioners, taking into account previous sales of stock of the corporation and other pertinent conditions."  The requirement for sale at public auction of stock not so subscribed for was continued.  So far as now material these provisions were re-enacted in St. 1894, c. 472, and in R. L. c. 109, §§ 30, 31, and in St. 1906, c. 463, Part II, §§ 69, 70, except that the price was required to be fixed at not less than its market value.  By St. 1908, c. 636, the right to determine the price at which the stock should be issued was taken away from the railroad commissioners and vested in the stockholders of the corporation, with the limitation that it should be not less than par, but it was provided in § 3 of this act that the determination by the board of railroad commissioners under St. 1906, c. 463, Part II, § 65, as to the amount of stock reasonably necessary for the pur-

pose for which it was authorized, should be "based upon the price
at which such stock is to be issued as fixed by the stockholders:
provided, that the board shall refuse to approve any particular
issue of stock if, in the opinion of the board, the price fixed by the
stockholders is so low as to be inconsistent with the public inter-
est." In effect this change transferred the initial duty of fixing
the price at which new stock should be issued from the railroad
commissioners to the stockholders, but left with the commission-
ers the duty of protecting the public interests by withholding
their approval of a price, which would not yield an adequate re-
turn to the corporation for the stock issued or which in other
respects was incompatible with a sound public policy.

General regulations as to the issuance of bonds by railroad com-
panies are to be found in St. 1874, c. 372, § 49, St. 1875, c. 58, St.
1876, c. 170, Pub. Sts. c. 112, § 62, St. 1883, c. 7, St. 1887, c. 191.
Provisions for public supervision of the propriety and necessity of
the issuance of railroad securities first appeared in St. 1894, c. 462,
whereby it was enacted that no stock or bonds should be issued by
railroad corporations unless voted by the railroad commissioners
to be reasonably necessary for the purposes for which such stock
or bonds were issued. This act was extended by St. 1897, c. 337,
to issues of coupons, notes and other evidences of indebtedness
payable more than twelve months after date. These provisions
were incorporated without substantial change in R. L. c. 109, § 24,
and in St. 1906, c. 463, Part II, § 65.

It is apparent from this review of statutes that the progressively
developed policy of the Commonwealth has been to regulate and ·
supervise the issue of stock and obligations by railroad corpora-
tions in such a way as to prevent stock watering or financial ex-
ploitation of such corporations. In earlier years statutes laid
down general rules controlling the conduct of railroad corpora-
tions, but leaving the execution to the judgment of the stock-
holders and officers of the corporations. Since 1894, through the
instrumentality of a public board, supervision of this corporate
judgment has been required, to the end that only such and so
great financial obligations should be issued as would meet the
reasonable necessities of the corporation. This policy has been
manifested as to other public service corporations, such as gas
and electric light companies, aqueduct companies and street

railway companies.  See, for a discussion of this policy historically considered, *Fall River Gas Works* v. *Gas & Electric Light Commissioners*, 214 Mass. 529.

The provisions of St. 1913, c. 784, §§ 15 and 16, which govern the present application, must be read and interpreted in the light of this history of the statutory development of the public regulation of stock issues of railroad corporations.  By § 15 "A railroad corporation may issue shares of capital stock, bonds, notes or other evidences of indebtedness, for the purpose of funding its floating debt, or for any other lawful purpose," but by § 16 "Before any railroad corporation shall issue any shares of capital stock or any bonds, notes or other evidences of indebtedness payable at periods of more than twelve months after the date thereof, it shall apply to the commission for its approval of the proposed issue to such amount as the commission shall determine to be reasonable and proper. . . . Any order of the commission approving any such issue of stock, bonds, notes or other evidences of indebtedness may provide for the application of the proceeds thereof to such particular uses as the commission shall by that order or by some subsequent order specify, and the corporation shall not apply such proceeds otherwise than as thus specified in such order or orders.  The decision of the commission as to the amount of stock which is reasonably necessary for the purpose for which such stock is proposed to be issued shall be based upon the price at which such stock is to be issued, and the commission shall refuse to approve any particular issue of stock, if, in its opinion, the price at which it is proposed to be issued is so low as to be inconsistent with the public interest."

There is nothing in this or other language in the act to indicate a reversal of the general policy of regulation of issues of stocks, bonds and other evidences of indebtedness by a public board. The words quoted from these sections, which are the vital ones as to the matter now under discussion, are found in substance in earlier acts.  The context or collocation fails to show that they have a different meaning now than before.  A considerable change is wrought by the legislation of 1913, but it is in the direction of enlarged powers of regulation and supervision on the part of the commission.  No intent is disclosed, however, to relax the general policy heretofore established of protecting the public

against over-capitalization or excessive indebtedness. See especially § 29 of the act. The statute still requires that the commission shall approve the issue of capital stock and other obligations. Its end and aim now, as it has been before, is that a reasonable and proper financial return for its securities may be made to the corporation and the amount so received be expended for the lawful purposes specified in the application. The decision of the commission as to the amount of stock to be issued, now, as under St. 1908, c. 636, is required to be based upon the price at which the stock is to be issued, with a further requirement that its approval shall be withheld if in its opinion the price at which it is proposed to be issued "is so low as to be inconsistent with the public interest." It is difficult to define the phrase last quoted. It is not now necessary to undertake to give a comprehensive statement of its signification, nor to determine the extent of the change wrought in the principles which should govern the determination of the commission in giving its approval under the new statute compared with those under the old. At least it must be taken, as was said by the railroad commissioners in their Fortieth Annual Report, pp. 153–155, "to mean in any specific case an issue price materially lower than a price which would assure a ready market for the issue."

The approval by the commission of an issue of stock must relate to the present and not to a remote future. This is required by the legislative intent disclosed by the review of the statutes. It also is necessary in order to make the St. of 1913 reasonably effective in the accomplishment of practical results. To the end that the purposes may be accomplished for which legislative regulation has been established, it is necessary that the price to be fixed should relate substantially to present conditions. Of course the statute is to be interpreted rationally, and there must be considerable flexibility as to the time within which stock may be sold after it is authorized. Reasonable limits of time may be considered in approving an issue of stock and putting it on the market. But that is not what is contemplated by the order now under review.

It is not pretended that the price at which the stock of this corporation may be selling within a period of ten years, beginning at the expiration of five years from the present, can be forecast by anybody. Neither its market value nor its real value can be determined except as of a time approximately near the present.

It is impossible in the nature of things that the commission can have or form an intelligent "opinion" whether the price at which stock is to be issued during a period of ten years beginning five years in the future, is "so low as to be inconsistent with the public interest." Such a price cannot be determined as a part of the present value of a debenture to which is attached the right to convert into stock at future dates. There is an inherent element of uncertainty and speculation in an obligation of this character which is incompatible with a present opinion based upon known conditions as to the value of its component elements. If the railroad company is well managed and prosperous for ten years, these convertible debentures would rise in value. But the railroad company would gain no benefit from the rise in the value of its stock incident to such prosperity. Its stock, nevertheless, must be issued at par under the order of the commission. Indeed, it must be issued at par in order to conform to the terms of the convertible debenture according to which it is to be exchanged for stock at par at the option of the holder. The amount of stock which the commission intelligently can approve to be issued is inseparable from the price at which it is to be issued. The price at which the public interest may require that it be issued during a period of ten years beginning five years hence is impossible of ascertainment now. But the approval of convertible debentures with the right to take stock at par in payment during that period involves fixing a price of the stock during the like period. An order entered now that stock be issued at par during that period of time can afford no security that the corporation will get an adequate return for its stock, or that rates and charges fixed upon such a capitalization will be fair, or that the rights of other stockholders will be guarded properly. The mandatory requirement of the statute that the commission shall base its decision as to the amount of stock to be issued upon the price at which it is to be put out is inconsistent with the underlying idea of a convertible bond such as is proposed in the present proceeding. It has been argued with earnestness that a convertible debenture has become highly desirable in view of present conditions. This, however, is a matter rather for legislative than judicial consideration.

No request has been made for the approval of an issue of bonds without the convertible into stock feature. Apparently no vote

has been passed by the stockholders for an issue of that kind. Hence, the only matter to be considered upon this aspect of the case is whether approval of an issue of convertible debentures such as is set out in the order of the commission is within its legal power. The conclusion follows that the order approving the issue of convertible debentures and of stock was beyond the authority of the commission and hence must be quashed.

The ground upon which this decision rests is fundamental and it would be superfluous to discuss the numerous other less basic propositions which have been raised and argued. Nor is it necessary to decide questions of practice. The plaintiffs as stockholders plainly have a right to invoke the protection of the court against a proposed issue of convertible debentures and stock such as here is proposed. St. 1913, c. 784, §§ 16, 27. *Paine* v. *Newton Street Railway,* 192 Mass. 90. *Weston* v. *Railroad Commissioners,* 205 Mass. 94.

*Order of public service commission annulled.*