LOWELL GAS LIGHT COMPANY *vs.* DEPARTMENT OF PUBLIC UTILITIES.

Suffolk.    October 1, 2, 1945. — January 8, 1946.

Present: FIELD, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Public Utilities. Corporation,* Issue of stock, Public service corporation. *Equity Jurisdiction,* Public utilities. *Words,* "Reasonably necessary."

In a suit in equity under G. L. (Ter. Ed.) c. 25, § 5, seeking annulment of an order of the department of public utilities, the court cannot review or revise pure findings of fact made by the department, and can deal with its rulings or orders only to the extent that they are shown to be erroneous in law; and the burden of proving error is on the plaintiff.

Under G. L. (Ter. Ed.) c. 164, § 14, as amended by St. 1935, c. 222, the department of public utilities had jurisdiction to deny a petition by a gas company for approval of an issue of preferred stock even though such issue did not increase the total amount of the company's capitalization or indebtedness, if there was a substantial question whether the issue in any amount in existing circumstances was "reasonably necessary" within the statute's provisions, and the department found that it was not.

In performing its functions under G. L. (Ter. Ed.) c. 164, § 14, as amended by St. 1935, c. 222, when application was made by a gas company for approval of a certain issue of preferred stock, it was necessary that the department of public utilities inquire whether the proposed issue was "reasonably necessary for the purpose for which" it had been authorized by the company's stockholders in the sense of being reasonably necessary for the accomplishment of some purpose having to do with the obligations of the company to the public and its ability to carry out those obligations with the greatest possible efficiency.

No error of law was shown in the denial by the department of public utilities of a petition by a gas company for approval of a proposed issue of preferred stock where the department found in substance that the issue was for the purpose of interchange for common stock and that the interchange was not reasonably necessary for the company's business but was only reasonably necessary for the benefit of certain investors in the stock.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on February 26, 1945.

The case was reserved and reported by *Spalding,* J.

*R. G. Dodge,* (*J. Wiggin & T. M. Banks, Jr.,* with him,) for the plaintiff.

*C. A. Barnes,* Attorney General, (*G. P. Drury,* Assistant Attorney General, with him,) for the defendant.

QUA, J. This is a bill in equity under G. L. (Ter. Ed.) c. 25, § 5, to annul an order of the department of public utilities in so far as it denied a petition of the plaintiff for approval of a proposed issue of preferred stock. The single justice reserved and reported the case for the consideration of the full court.

A demurrer to the bill is within the scope of the report but has not been separately argued and is deemed to have been waived. The record contains all that is necessary for a decision on the merits.

In a bill brought under § 5 the court cannot review or revise pure findings of fact and can deal with rulings or orders of the department only to the extent that they are shown to be erroneous in law. *Boston & Albany Railroad* v. *Department of Public Utilities,* 314 Mass. 634, 636. And the section expressly provides that "The burden of proof shall be upon the party adverse to the commission to show that its order is invalid."

The petition by the plaintiff to the department alleged that the petitioner (the present plaintiff) had an outstanding, paid in capital stock amounting to $1,524,050 divided into sixty thousand nine hundred sixty-two[1] shares of common stock; that the stockholders, at a meeting at which sixty thousand two hundred thirty-nine shares were represented, had unanimously voted (a) that the corporation purchase from shareholders who should elect to sell, "for cash at par," a number of common shares not exceeding thirty thousand four hundred eighty-one, being half of the total number, all shares purchased to be retired and canceled forthwith, and (b) that it issue and sell "for cash at par" thirty thousand four hundred eighty-one "new preferred shares." An amendment to the original vote

---

[1] This figure includes nine hundred sixty-two shares of so called "Series 'A'" stock, which now differs from common stock only in name and is treated in this opinion as part of the common stock.

inserted a provision that the proceeds of the sale of the preferred shares should be used to purchase the common shares. The exact dividend and voting rights of the proposed preferred stock are not important in this controversy.

The department found that the real purpose of the petition was to exchange half of the common stock for preferred stock by means of bookkeeping or other paper entries; that no actual cash would be passed; that the American Utilities Associates held approximately ninety-eight per cent of the stock of the company; that this stock was pledged for a note which certain persons had purchased, thereby acquiring control of the stock; that these persons, in order to "refinance" this purchase, desired to obtain preferred stock, which could be sold much more easily than common stock; that in this way they would be enabled to "refinance" the purchase without sacrificing the savings which the company enjoys on its Federal income tax by being able to make a consolidated tax return with the American Utilities Associates; that this tax saving is only an incident of the proposed transaction, the prime purpose of which is to "refinance" the purchase; that the present tax law under which the saving is effected has been changed many times and may be changed again, and "therefore does not warrant a permanent change in the capital structure of the company"; that the department was unable to set forth in a certificate to the Secretary of the Commonwealth a purpose within G. L. (Ter. Ed.) c. 164, § 14, for which the issue of preferred stock is reasonably necessary; that the department in its opinion could not properly certify that the proposed interchange was reasonably necessary for the company's business; and that it was only reasonably necessary for the benefit of the most recent indirect investors in the company's stock.

General Laws (Ter. Ed.) c. 155, § 18, provides in part that every corporation, with exceptions not here applicable, may issue preferred stock to an amount not exceeding at any time the amount of the general stock then outstanding. See c. 164, § 6 (d). Chapter 164; § 10, provides in substance that gas and electric companies, unless otherwise

expressly provided, may increase their capital stock by such amounts as may be authorized by the department in accordance with § 14 and may reduce their stock, subject to the provisions of cc. 164 and 158.   Chapter 164, § 11, provides that no gas or electric company, with an exception not here applicable, shall "issue any share of stock to any person" unless the par value or the price thereof "is first paid in cash to its treasurer."   Chapter 164, § 14, as amended by St. 1935, c. 222, is the principal section conferring upon the department power to regulate the issue of stock by gas and electric companies.   The part of this section as amended with which we are especially concerned reads, "Gas and electric companies shall issue only such amount of stock and bonds, and of coupon notes and other evidences of indebtedness payable at periods of more than one year after the date thereof, as the department may from time to time vote is reasonably necessary for the purpose for which such issue of stock, bonds, coupon notes or other evidences of indebtedness has been authorized." This section further provides that a certificate of the vote of the department shall be filed in the office of the "state secretary," and that "No application for the approval of an issue of stock shall be made unless authorized by vote of the incorporators, if an original issue, or of the stockholders if an increase of stock, passed not more than four months prior to such application; but a vote of the stockholders to increase the capital stock may be passed before or after the decision of the department."   Sections 18 and 19 of the same chapter, applicable in cases of an increase of stock, contain provisions as to the price at which shares may be issued and the manner of their sale and define the powers of the department relative to these matters.

The plaintiff contends that c. 164, § 14, gives the department no power to pass upon the reasonable necessity of new issues of stock which, like those here involved, are merely rearrangements of the capital structure of a company but which do not increase the total amount of its capital stock. This contention cannot prevail.   No doubt the prevention of overcapitalization was a prime object of the Legislature

in enacting this and predecessor statutes, but the history of the section as disclosed in decisions of this court and the construction there given to it refute the view that the legislative purpose was to be accomplished solely through limitation upon the total amount of stock to be issued.

In *Attorney General* v. *Massachusetts Pipe Line Gas Co.* 179 Mass. 15, at pages 20–21, this court, referring to St. 1894, c. 450, § 1, the original source from which the present § 14 derives, said, "It prescribes the terms on which and the method by which such a corporation can issue capital stock divided into shares. As to the right of a corporation to fix the amount of its stock and to issue stock, it prescribes a prerequisite on which the right to act depends. We think that the elaborate requirements of § 1 of this statute were intended to be fundamental, underlying the entire statutory authority of such corporations to issue stock."

In *Fall River Gas Works Co.* v. *Gas & Electric Light Commissioners*, 214 Mass. 529, at pages 537–538, the court said, "It is . . . to be noted that within its sphere of action the statute applies to every issue of stock, whether it be the first or any subsequent issue, and is absolute," and "In view of the legislation leading up to St. 1894, c. 450, and of the obvious reasons, so far as respects the public served by these corporations, and reasons somewhat different but equally obvious so far as respects the bondholders and stockholders, for a change which should result in an authoritative and more efficient enforcement of the law as to the issue of stock, we are of opinion that it was the manifest purpose and legal effect of this statute, reënacted in R. L. c. 109, § 24, to change the whole method of the issue of stock by the public service corporations therein named, and to take away from such corporations and to vest in public officers the right to determine the general question of the reasonable necessity of the issue. And the decision of the board is final unless based upon some error of law." This case, as we interpret it, holds that notwithstanding the apparent emphasis upon "amount" in the wording of the section the intent of the Legislature was to confer upon the board jurisdiction to determine not

only whether the amount of the proposed issue is necessary for the purpose for which it is authorized but also whether it is necessary to issue any stock at all for that purpose.[1]

In *Bulkeley* v. *New York, New Haven & Hartford Railroad*, 216 Mass. 432, at pages 436–437, this court said, "It is apparent from this review of statutes that the progressively developed policy of the Commonwealth has been to regulate and supervise the issue of stock and obligations by railroad corporations in such a way as to prevent stock watering or financial exploitation of such corporations. In earlier years statutes laid down general rules controlling the conduct of railroad corporations, but leaving the execution to the judgment of the stockholders and officers of the corporations. Since 1894, through the instrumentality of a public board, supervision of this corporate judgment has been required, to the end that only such and so great financial obligations should be issued as would meet the reasonable necessities of the corporation. This policy has been manifested as to other public service corporations, such as gas and electric companies, aqueduct companies and street railway companies. See, for a discussion of this policy historically considered, *Fall River Gas Works Co.* v. *Gas & Electric Light Commissioners*, 214 Mass. 529."

Enough has been said to show not only that the wording of the statute is sufficiently comprehensive to include all issues of stock, bonds, coupon notes, and other evidences of indebtedness, whether or not they increase the total capitalization or the total indebtedness of the company, but also that in instances where there is no such increase there nevertheless remains a substantial question for the department to decide — the question whether the pro-

---

[1] It is true that in the *Fall River Gas Works Co.* case, near the end of its opinion, the court held that the commissioners were in error in refusing approval on the ground taken by them that the company should have used its accumulated profits instead of seeking an additional stock issue (see 214 Mass. at pages 538–539), and it seems probable that the Legislature by St. 1914, c. 742, § 39, added what is now the second sentence of G. L. (Ter. Ed.) c. 164, § 14, in order to change the effect of that decision on that point. But we cannot agree with the plaintiff that this change in the statute had the effect of limiting the powers of the controlling board as broadly defined in the earlier parts of the opinion to which we have referred above. Rather its effect was to remove the single restriction which the opinion had placed upon those powers.

posed issue in any amount is reasonably necessary in the circumstances existing. Indeed, it would seem that if the public is to be effectively guarded against the evils of over-capitalization, control cannot end with decisions merely that the amounts sought to be issued are reasonably necessary to be expended for the purposes intended, but must go farther and determine whether the purposes themselves are reasonably necessary. Overcapitalization can be brought about by issuing securities for purposes that are not reasonably necessary as well as by issuing them in amounts that are not reasonably necessary. In *Public Service Commission* v. *New York & Richmond Gas Co.* 244 App. Div. (N. Y.) 398, the court held that a change of common shares to preferred shares without voting privileges was an issue of stock within the terms of the regulatory statute. Compare *Public Service Commission* v. *Consolidated Gas, Electric Light & Power Co.* 148 Md. 90, holding that under the statute of Maryland a change of existing stock from stock with par value to stock without par value on a basis of one to four was merely an alteration in the number and form of the shares and did not require the approval of the commission.

We do not find any error of law affecting the decision of the department. Since the cases just cited show that the words "reasonably necessary" are not employed solely with reference to the amount of a proposed issue but refer also to the necessity of the issue itself, it follows inevitably that the department must inquire whether the declared purpose of the proposed issue is in fact in the circumstances a reasonably necessary purpose. And having in mind that the function of the department is the protection of public interests and not the promotion of private interests, we think that "reasonably necessary" means reasonably necessary for the accomplishment of some purpose having to do with the obligations of the company to the public and its ability to carry out those obligations with the greatest possible efficiency. At the hearing before the department the burden of proof was upon the plaintiff to establish a reasonable necessity of this kind. We think

that the decision of the department discloses a correct understanding of its duties and an effort to perform them. The department cited at length the statutes and decisions to which we have referred in this opinion. The department held that the statutes do not authorize a stock issue "except to meet the reasonable necessities of the business of the corporation." It found in substance that the proposed interchange of stock was not reasonably necessary for the company's business; that it was reasonably necessary only for the benefit of certain investors in the stock; and that the department could not certify "a purpose contemplated by said section [G. L. (Ter. Ed.) c. 164, § 14], for which the issue of preferred stock is reasonably necessary."

Whether the issue was reasonably necessary for the business of the company, that is, to enable it to carry on efficiently the public service of supplying gas, was a question for the department and not the court to decide. The only grounds on which it might be found that the issue was reasonably necessary for this purpose which were suggested by the evidence before the department or the argument here were (1) that preferred stock is more saleable than common stock and that an issue of preferred stock now would become established in the market and be of assistance in the future in enabling the company to sell still more stock to obtain the capital needed for future improvements, and (2) that the new issue would enable the present holders of stock to sell non-voting preferred stock without impairing the right of the company to file a joint tax return with the American Utilities Associates and so to escape annually about $40,000 of Federal taxes which the company would have to pay if the holders sold their present common stock. We do not hold that the department could not discover in these considerations ground for finding that a reasonable necessity for the new issue existed affecting the capacity of the company to serve the public. We hold only that the failure of the department to be convinced by them that such necessity existed was not error of law. Whether the substitution of preferred stock with limited voting rights and preferred claims upon dividends for half the common stock

with full voting rights and no preferred claims would or would not serve the true interests of the company in its public aspects depended upon many considerations about which opinions might well differ. And the possibility of saving taxes presents no question of law. Taxes had been saved and might continue to be saved without the new issue in consequence of the interest in saving them of the holder of ninety-eight per cent of the stock. On the other hand, a sale by the holder at any time might destroy the tax saving, and an issue of preferred stock would furnish no guaranty against a sale. As the department suggests, the tax laws might be amended. To what extent the tax argument ought to prevail as a reason for permanently changing the corporate structure by setting up preferred stock was also a matter about which opinions might differ and was for the department to decide.

The statement in the decision of the department, "The circumstances of this transaction are such that to so extend G. L. c. 164, § 14, as to make it apply to this and other cases in which mere stock readjustments were involved might result in serious injury to the public interest, and it is not desirable in the public interest in the best exercise of our judgment and discretion," when read in connection with the rest of the decision, seems to us to mean only that the department is not required by G. L. (Ter. Ed.) c. 164, § 14, to approve as reasonably necessary from the public standpoint "mere stock readjustments" such as are involved in this case, which are not shown to be desirable in the public interest and may be injurious to that interest. Such "readjustments" could hardly be "reasonably necessary." If the statement means any more than this, it nevertheless does not affect with error of law the crucial findings and rulings contained in the decision.

We have not found it necessary to deal with the defendants' contention that the proposed issue of preferred stock would be invalid on the ground that the par value or price of the preferred shares to be issued by the company would not be "first paid in cash to its treasurer" as required by G. L. (Ter. Ed.) c. 164, § 11.

*Bill dismissed.*