388 So.2d 1031 (1980)
FT. PIERCE UTILITIES AUTHORITY OF the CITY OF FT. PIERCE, Gainesville-Alachua County Utility Board, City of Lakeland, Florida, City of Starke, Florida, City of Homestead, Florida, City of Tallahassee, Florida, Sebring Utilities Commission, New Smyrna Beach Utilities Commission, City of Kissimmee, Florida, City of Gainesville, Florida, Petitioners,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Respondent.
No. 57854.
Supreme Court of Florida.
September 25, 1980.
*1032 Joseph C. Jacobs, C. Everett Boyd and J. Lawrence Johnston of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, and George Spiegel, Robert A. Jablon and Alan J. Roth of Spiegel & McDiarmid, Washington, D.C., for petitioner.
Prentice P. Pruitt, Legal Director, and Joseph A. McGlothlin, Staff Counsel, Tallahassee, for respondent.
Hugh C. Macfarlane and Ansley Watson, Jr., of Macfarlane, Ferguson, Allison & Kelly, Tampa, for Peoples Gas System Inc., intervening respondent.
SUNDBERG, Chief Justice.
We have for review pursuant to our jurisdiction under article V, section 3(b)(3), Florida Constitution (1972), an order of the Florida Public Service Commission (Commission) approving an application of Peoples Gas System, Inc. (Peoples) to issue certain securities. The issue presented is whether the Commission is empowered to consider, in connection with an application for issuance of securities, a merger of two other corporate entities which allegedly will be made possible through the purchase of certain properties of one of those entities from the proceeds of the securities issue.
On May 24, 1979, Peoples, a public utility as defined in section 366.02, Florida Statutes (1977), applied to the Commission for authority to issue and sell (i) senior promissory notes, eleven percent, in the amount of $35,000,000, and (ii) up to 1,505,000 shares of Class B common stock (nonvoting), par value $3.33 1/3 per share, for a consideration of $10 per share. The application stated that the proceeds of the issuance would be utilized to purchase at net book value, pursuant to contract, the retail natural gas distribution properties owned by Florida Gas Company (Florida Gas).
On June 29, 1979, the Commission issued Order 8932 in which it granted to Peoples the authority sought in its application. The order concluded that the proceeds of the proposed issuance would be used for a lawful object within the legitimate corporate purposes of the applicant, and that the issuance would not impair the ability of Peoples to perform the service required of it as a public utility. The order observed that the effect of the issuance would be to replace the outstanding security instruments of Florida Gas with those bearing higher rates of interest. The Commission reserved for disposition in an appropriate ratemaking proceeding the issue of whether rate-payers should be required to bear the higher interest costs associated with the acquisition by Peoples. Additional language made clear the fact that the order determined only the authority of the applicant to enter into the transactions and that any other related matters arising as a result (rate-base valuation, costs, etc. in addition to the interest issues specifically described) were not passed upon by the Commission's action but would be treated in ratemaking proceedings.
On July 16, 1979, certain municipal utilities (petitioners) filed a motion to intervene and petition for reconsideration of Order No. 8932. In the petition the municipal *1033 utilities requested the Commission to set the application of Peoples for public hearing on the issue of whether, in view of the planned merger between Florida Gas and Continental Group, Inc. (Continental), approval of the application for authority to issue securities would be in the public interest. On July 18, the municipalities requested oral argument on their motion and petition. The reply of Peoples to these pleadings was filed on July 20, 1979. Oral argument was held before the Commission on August 13, 1979. On September 12, 1979, the Commission issued Order No. 9051, in which it denied the petition for reconsideration. The order essentially concluded that the Commission could not properly include as an issue in Peoples' application for issuance of securities the desirability of the merger between Florida Gas and Continental as demanded by the petition.
By their petition for review the municipal utilities raise two issues. We state and will address them in inverse order of their presentation. First, in a utility financing application, can the Commission reserve, for a subsequent ratemaking proceeding, issues of valuation and costs which may arise as a result of the financing? Second, in a utility financing application, is the Commission required to pass on the merger of two separate corporate entities, to which merger the applicant is not a party and over which merger the Commission otherwise has no jurisdiction, where the proceeds of the financing allegedly will make possible the merger?
Petitioners have presented no authority nor have we been able to find any statutory or case law which would require the Commission to resolve in the financing application, rather than defer to a ratemaking proceeding, issues pertaining to rate-base valuations and whether increased interest costs will be reflected in the rates Peoples is allowed to charge in the future. Since we find such reservation of jurisdiction by the Commission to be lawful, we reject petitioners' argument as to the first issue.
With respect to the second issue, the authority of the Commission to regulate the issuance and sale of securities by an intrastate natural gas distribution company arises from section 366.04(1), Florida Statutes (1977), which reads in pertinent part as follows:
In addition to its existing functions, the Florida Public Service Commission shall have jurisdiction to regulate and supervise each public utility with respect to its rates, service and the issuance and sale of its securities... .
This jurisdiction is implemented by chapter 25-8 of the rules of the Commission,[1] which by section 25-8.02(L) provides that an applicant for issuance of securities should show that:
[T]he issue (1) is for some lawful object within the corporate purposes of the applicant and compatible with the public interest, which is necessary or appropriate for or consistent with the proper performance by the applicant of service as a public utility and which will not impair its ability to perform that service; and (2) is reasonably necessary or appropriate for such purposes.
Two other propositions are uncontradicted. First, the Commission has no jurisdiction to regulate the acquisition by Peoples of the gas distribution system of Florida Gas. Second, the Commission has no jurisdiction to regulate the merger of Florida Gas and Continental. See ch. 366, Fla. Stat. (1977).
Petitioners assert, however, that the public interest will not be served by the merger and that the Commission is obliged to consider that issue in connection with the financing application. This obligation, they say, arises from the legislative declaration contained in section 366.01, Florida Statutes (1977):
Legislative declaration. The regulation of public utilities as defined herein is declared to be in the public interest and this chapter shall be deemed to be an *1034 exercise of the police power of the state for the protection of the public welfare and all the provisions hereof shall be liberally construed for the accomplishment of that purpose.
Petitioners maintain that the public interest would be adversely affected by the merger because among the properties of Florida Gas which will be controlled by Continental after the merger are its exploration and gas transmission subsidiaries. The transmission subsidiary, Florida Gas Transmission Company, controls the interstate pipeline that supplies natural gas to Florida. It is hypothesized that following the merger, Continental may divert gas supplies coming into the state for its own energy consuming enterprises, thereby creating a shortage of natural gas in Florida. The likelihood of this eventuality is increased, it is said, by the fact that the merged enterprise will own no gas distribution properties in Florida after the sale from Florida Gas to Peoples. Furthermore, it is suggested that new supplies developed through the exploration subsidiary of Florida Gas will be devoted to the out-of-state energy needs of Continental.
Petitioners find principal support for the authority of the Commission to interject the issue of the merger into the financing application in two United States Supreme Court decisions as well as two state decisions. In Federal Power Commission v. Transcontinental Gas Pipe Line Corp., 365 U.S. 1, 81 S.Ct. 435, 5 L.Ed.2d 377 (1961), the Court sustained the Federal Power Commission denial of an application for certificate of public convenience and necessity based upon the inferior use made of gas and price considerations in certain nonregulated sales. As pointed out by respondents, however, the Federal Power Commission was entitled to consider sales over which it had no regulatory authority because of its specific statutory authority to directly regulate the transportation of natural gas in interstate commerce, which was designed to overcome by means of a comprehensive federal scheme the "gaps" inherent in regulation of transactions for the sale of natural gas at the state level. The regulatory authority asserted was direct and specifically designed to promote the public convenience and necessity.
In the only federal case dealing with an application for issuance of securities, the Federal Power Commission had refused to grant a hearing on whether proceeds of the securities issue would be used to finance or refinance activities that were anticompetitive in alleged violation of antitrust laws as well as the Federal Power Act and the Public Utility Holding Company Act. In Gulf States Utilities Co. v. Federal Power Commission, 411 U.S. 747, 93 S.Ct. 1870, 36 L.Ed.2d 635 (1973), the Supreme Court affirmed the District of Columbia Court of Appeals' decision remanding the cause to the Federal Power Commission for consideration of the claims raised by the protestants. Although the Federal Power Commission had held that the issues raised by the protestants were irrelevant to the purpose of issuing bonds to refund short-term indebtedness previously authorized by the Commission, the Court found otherwise. In holding the anticompetitive claim to be an appropriate issue in the financing application proceedings, the Court stated:
The mandate that § 204 of the Federal Power Act, 16 U.S.C. § 824c, imposes upon the Commission is a broad and impressive one. Section 204(a) empowers the Commission to authorize the issue of a security by a public utility only "if it finds that such issue .. . is for some lawful object, within the corporate purposes of the applicant and compatible with the public interest." This requires the Commission to inquire into and to be satisfied with the purposes of the issue and its lawfulness. And even if its "object" is lawful, the necessary inquiry is not ended, for, in addition, the object must be "compatible with the public interest."
411 U.S. at 756, 93 S.Ct. 1876 (emphasis in original).
Petitioners maintain that the "public interest" language of section 366.01 as well as the direction that the chapter be "liberally *1035 construed" imposes upon the Commission in a financing application the same obligation as was imposed upon the Federal Power Commission under the "compatible with public interest" language of section 204 of the Federal Power Act. But even accepting this premise, respondents assert that the Gulf States Utilities case falls far short of being persuasive authority for the position advocated by petitioners. In Gulf States Utilities the object of the financing was to foster allegedly unlawful anticompetitive practices by the regulated applicant. The object of the financing in this case is to acquire the distribution properties of Florida Gas, an object in and of itself lawful and compatible with the public interest as found by the Commission. The activity asserted by petitioners to be incompatible with the public interest is the merger of Florida Gas and Continental-an activity in which Peoples has no direct part and one which clearly is without the purview of the Commission to regulate. Hence, we must agree with the Commission that its statutory authority left it "one step removed from the ability to pass upon the merger of Continental and Florida Gas within the instant proceeding."
The two state cases relied upon by petitioners, Alabama Power Company v. Alabama Public Service Commission, 179 So.2d 725 (Ala. 1965), and Lowell Gas Light Company v. Department of Public Utilities, 319 Mass. 46, 64 N.E.2d 640 (1946), are likewise inapposite. In each of those cases the objective of the order was to regulate by direct action the applicant utility over which the agency had jurisdiction and regulatory authority. In neither case did the court approve of utilizing an agency's jurisdiction over the financing application of one entity to influence the actions of two separate utilities over which the agency completely lacked jurisdiction.
Petitioners suggest an alternative basis for causing scrutiny of the merger transaction arising out of Peoples' financing application. Although not well defined, as we understand it the argument appears to be that the Commission should disapprove the Peoples' financing which will prevent the distribution properties acquisition from Florida Gas, thereby forcing the merger with Continental to take place with the distribution properties still a part of Florida Gas. Under these circumstances the merger transaction would come under the scrutiny of the Securities and Exchange Commission pursuant to the Public Utility Holding Company Act. They then assert that the public interest considerations which they espouse would be open to examination in Securities and Exchange Commission proceedings. The municipal utilities support this rather novel approach by reference to section 366.015, Florida Statutes (1977),[2] dealing with interagency liaison. We disagree that section 366.015 has so broad a reach or embodies such public policy. To assert that section 366.015 contemplates the use of a financing application proceeding as leverage to trigger federal review of a merger transaction, over which the Commission lacks jurisdiction, is sophistic.
We are buttressed in our conclusion by the principle that administrative construction of a statute by the agency or body charged with its administration is entitled to great weight and will not be overturned unless clearly erroneous. State ex rel. Szabo Food Service, Inc. of North Carolina v. Dickinson, 286 So.2d 529 (Fla. 1973); State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823 (Fla. 1973). In view of the foregoing discussion we cannot say that the Commission's interpretation *1036 of the extent of its statutory authority to regulate the issuance and sale of securities is clearly erroneous.
Accordingly, the petition for certiorari is denied.
ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Ch. 25-8, Fla. Admin. Code.
[2] Section 366.015, Florida Statutes (1977):

Interagency liaison. The Florida Public Service Commission is directed to provide for, and assume primary responsibility for, establishing and maintaining continuous liaison with all other appropriate state and federal agencies whose policy decisions and rulemaking authority affect those utilities over which the commission has primary regulatory jurisdiction. This liaison shall be conducted at the policy-making levels as well as department, division, or bureau levels. Active participation in other agencies' public hearings is encouraged to transmit the commission's policy positions and information requirements, in order to provide for more efficient regulation.