CAMPBELL, Acting Chief Judge.
Appellant, A.S., appeals the final order of the Department of Health and Rehabilitative Services (HRS), which denied his request to expunge his name from a confirmed report of child neglect within the meaning of section 415.503(9)(e), Florida Statutes (Supp.1990). The final HRS order adopted and incorporated by reference all findings of fact in the recommended order of the hearing officer assigned to hear the matter by the Division of Administrative Hearings (DOAH), but rejected the hearing officer’s conclusions of law and recommendations. The hearing officer had concluded that appellant’s conduct did not rise to the level where he should be classified as the perpetrator of child neglect or abuse and had recommended that appellant’s request to expunge his name from a confirmed report of child neglect should be granted.
We reverse the final order of HRS and remand with instructions that appellant’s request for expungement be granted.
The recommended order of the DOAH reads, in pertinent part, as follows:
STATEMENT OF THE ISSUES
Whether a proposed confirmed report of child neglect, as reported in FPSS Report No. 91-052785, related to incidents occurring on or about May 18, 1991, should be amended or expunged from the Abuse Registry.
PRELIMINARY STATEMENT
Respondent was notified by letter that he had been named in a report of abuse, neglect or exploitation as to A.S., a child, and that the report had been classified as “proposed confirmed.” Respondent, A.S., requested expungement of that report, which was denied by letter of the District Administrator on August 22, 1991. By letter dated September 20, 1991, Respondent requested an administrative hearing to contest the proposed confirmed report of child neglect. The matter was referred to the Division of Administrative Hearings on October 7, 1991 and this hearing followed.
At the hearing Petitioner called four witnesses, and two exhibits were admitted in evidence. The Respondent testified under oath, called one witness and offered no exhibits. Respondent submitted proposed findings of fact which essentially commented on, and evaluated the testimony of the witnesses, and cannot be ruled on in separate numbered paragraphs. Petitioner did not submit proposed findings. A transcript of the hearing was not prepared.
*1204 Based upon all of the evidence, the following findings of fact are determined:
FINDINGS OF FACT
1. A.S. is a six year old male child, born: February 28, 1985, who resides with Respondent, A.S., his natural father.
2. Respondent, A.S., is a 28 year old law enforcement officer, who is divorced from the natural mother of the child, and he is the primary custodial parent.
3. The natural mother had visitation rights with the child for the weekend of May 18-19, 1991, but cancelled on short notice.
4. In the late afternoon or early evening hours of May 18, 1991, a Saturday, Respondent received information on the whereabouts of a suspected felon. He elected to go on a stakeout and investigation which sought to apprehend this person. Respondent had not made child care arrangements for his son, A.S. Respondent decided that it would be safe to leave the child at home alone. A.S. was instructed not to go outside or to answer the door or the telephone, and that Respondent would come by and check on him periodically. There was sufficient food and drink available to the child in the residence.
5. Around 10 p.m. on May 18, 1991, two neighbors of Respondent’s became aware that the child, A.S., was alone in the residence and was upset. Communication was established with the child and he agreed to come over to the home of one of the neighbors, and stay there until his father was contacted. Respondent could not be reached for several hours. In the mean time, law enforcement and HRS were notified. Upon the arrival of the Respondent at his residence, after completion of the preliminary investigation by the authorities, the child was returned to the care of Respondent.
6. On May 18, 1991, after being left alone for several hours, the child was scared and upset at having been left alone for an extended period of time and the uncertainty of Respondent’s return, but did not suffer harm within the meaning of the statute.
7.In addition to the incident May 18, 1991, on at least six occasions in early 1991, the child remained unattended for a period of between one-half hour and one hour and a half after school, until the Respondent’s return from work.
CONCLUSIONS OF LAW
1. The Division of Administrative Hearings has jurisdiction over the subject matter of this proceeding, and the parties thereto, pursuant to subsections 120.57(1) and 415.504(4), Florida Statutes.
2. Section 415.503(3), Florida Statutes (1989) defines child abuse or neglect to mean harm or threatened harm to a child’s physical or mental health or welfare by acts or omissions of the parent or other person responsible for the child’s welfare.
3. “Harm” is defined in Section 415.-503(9), Florida Statutes (Supp.1990) as follows: “Harm” to a child's health or welfare can occur when the parent or other person responsible for the child’s welfare:
(d) Abandons the child
(e) Fails to provide the child with supervision or guardianship by specific acts or omissions of a serious nature requiring the intervention of the department or the court.
(f) Fails to supply the child with adequate food, clothing, shelter, or health care, although financially able to do so
[[Image here]]
4. If an alleged perpetrator requests amendment or expunction of a record and the Secretary of HRS refuses the request, the alleged perpetrator has the right to an administrative hearing. At such hearing, the department must prove by a preponderance of evidence that the perpetrator committed the abuse or neglect. Subsection 415.504(4)(d)3., Florida Statutes (Supp.1990).
5. The evidence in this case is clear that Respondent left his six year old son, *1205 A.S., unattended in his residence for several hours on May 18, 1991, and that the child became scared and upset. In addition, no responsible adult had been contacted to look after the child in Respondent’s absence. Respondent could not be contacted for a long period of time; the child had not been given adequate instructions on what to do in case of an emergency, and was of average maturity for a six year old child who could not be expected to respond maturely in case of an emergency in any event.
6. The evidence shows that Respondent showed care and concern for his son and did not abandon him, nor fail to provide him with adequate food, clothing and shelter. Respondent had unrealistic expectations concerning A.S.’s capabilities to mentally and physically care for himself. Respondent needlessly exposed him to the possibility of harm on May 18th, and showed his lack of understanding by having the child come home after school to an empty house on several prior occasions.
However, from the forgoing it is concluded that the acts or omissions of Respondent, A.S., were not of such a serious nature so as to require “the intervention of the Department or the Court.” Respondent showed poor judgment and lack of understanding of the capabilities of a six year old, and should seek counseling through parenting classes. However, his conduct does not rise to the level where he should be classified as the perpetrator of child neglect or abuse.
RECOMMENDATION
Based on the foregoing findings of fact and conclusions of law, it is
RECOMMENDED that Respondent’s request to amend or expunge his name from FPSS Report No. 91-052785 be GRANTED and the classification of the report be changed to “Closed Without Classification”.
The final order of HRS reads, in pertinent part, as follows:
FINAL ORDER
This cause came on before me for the purpose of issuing a final agency order. The Hearing Officer assigned by the Division of Administrative Hearings (DOAH) in the above-styled case submitted a Recommended Order to the Department of Health and Rehabilitative Services (HRS). A copy of the Recommended Order is attached hereto.
FINDINGS OF FACT
The department hereby adopts and incorporates by reference the findings of fact set forth in the Recommended Order.
CONCLUSIONS OF LAW
The department hereby adopts and incorporates by reference the conclusions of law set forth in the Recommended Order except where inconsistent with the following:
The Hearing Officer found that respondent left his six year old child alone and unsupervised from late afternoon until very late at night. The child had not been given adequate instructions on what to do in case of an emergency and in any event lacked the maturity to respond appropriately to an emergency. When the child became frightened, law enforcement and HRS intervened. The Hearing Officer concluded that respondent needlessly exposed his child to the possibility of harm and showed his lack of understanding by having the child come home after school to an empty house on several prior occasions. See findings of fact 1 and 4 through 6 and conclusions of law 5 and 6. The findings of the Hearing Officer constitute a failure to supervise under Section 415.-503(9)(e), Florida Statutes (1991).
Based upon the foregoing, it is
ADJUDGED, that the request for ex-punction be DENIED. Report number 91-052785 be classified as confirmed.
The facts of this case as found by the hearing officer of DOAH and adopted in the final order of HRS are undisputed. The critical issue before us and the one *1206 that should have been considered by HRS is whether those facts as admitted constitute child abuse or neglect as defined in section 415.503.
Child abuse or neglect means “harm or threatened harm to a child's physical or mental health or welfare by the acts or omissions of a parent_” Section 415.-503(3). In order to sustain the final order, HRS was required to show by a preponderance of competent, substantial evidence, harm or threatened harm to the physical or mental health or welfare of appellant’s six-year-old child attributable to appellant’s acts or omissions. Section 415.504(4)(d)(3), Fla.Stat. (Supp.1990).
The hearing officer concluded that the undisputed facts did not demonstrate such harm or threatened harm. HRS concluded upon the same facts that such harm or threatened harm was demonstrated by a preponderance of the evidence. While we might be inclined to dispose of this case in appellant’s favor by simply holding that the hearing officer’s determination of a disputed issue of fact concerning the presence of harm or threatened harm must prevail, we cannot allow the matter to rest there. Counsel for both appellant and appellee HRS have requested that we provide some needed guidance and clarification concerning the statutory directives sought to be enforced here.
While we are charged with the task of giving meaning and definition to statutory directives within the framework adopted by the legislature, we can only properly do so where the legislative standard adopted is in itself sufficiently definitive that our efforts at interpreting the statute do not amount in fact to legislative efforts rather than judicial interpretation. We conclude that in the statutes at issue here we are caught at just such an impasse. The critical statute here is section 415.503(9)(e) containing the definition of “harm” to a child. That statute, in pertinent part, reads as follows: “ ‘Harm’ to a child’s health or welfare can occur when the parent or other person responsible for the child’s welfare: ... (e) [f]ails to provide the child with supervision or guardianship by specific acts or omissions of a serious nature requiring the intervention of the department or the court; _” Our specific focus is whether appellant has been shown by a preponderance of the competent, substantial evidence to have engaged in “specific acts or omissions of a serious nature requiring the intervention of the department or the court.”
We find the statute seriously and fatally lacking in definitive terms for its actionable occurrences, and we are not in the position to supply that lack of definition where no guidance is attempted by the legislature. “Serious nature,” the qualifying term for the act charged, is not defined. Neither is the term “requiring the intervention of the department or the court” circumscribed by any definable boundaries. HRS has argued at one point that intervention should mean any time HRS is called upon to investigate a reported case of child abuse. HRS later concedes, and we agree, that the term “requiring the intervention” of HRS or the court is far too broad. We conclude that the legislature meant something more when they chose to specify that an act must be of such “a serious nature requiring the intervention of the department or the court_” While we are able to conclude that the terms mean more than mere investigation of reports, we are unable to ascertain what more is required. We are left without any definitive standards. If we who are trained in the law are without such standards, how can we hold those who may be charged with possible violations to any definable standard of conduct?
A constitutional challenge to the facial validity of section 415.903(9)(e) on the basis of vagueness and overbreadth has not been raised below or in this appeal. (Appellant was pro se in the proceedings below.) Even without such a challenge below to the facial validity of the statute, we could reach an attack on the facial validity for the first time on appeal. Brown v. State, 610 So.2d 1356 (Fla. 1st DCA 1992). However, in all candor, appellant does not yet challenge the facial validity of the statute. He has simply asserted the facts do not support his violation of the statute. In view of the fact that we cannot properly or *1207 adequately define the conduct proscribed by the statute because of its vagueness, we agree with appellant that his acts or omissions have not been adequately shown to violate an ill defined or undefined standard of conduct. The legislature should readdress and properly define the conduct it wishes to proscribe.
Reversed and remanded with instructions.
ALTENBERND and BLUE, JJ., concur.