648 So.2d 128 (1995)
DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, Appellant,
v.
A.S., Appellee.
No. 81814.
Supreme Court of Florida.
January 12, 1995.
*129 Jack Emory Farley, Dept. of Health and Rehabilitative Services, Tampa, for appellant.
Stanley E. Marable, Sarasota, for appellee.
PER CURIAM.
We have for review A.S. v. Department of Health & Rehabilitative Services, 616 So.2d 1202 (Fla. 2d DCA 1993), in which the Second District Court of Appeal found section 415.503(9)(e), Florida Statutes (Supp. 1990), to be unconstitutionally vague. Based on the district court's finding, mandatory jurisdiction vested with this Court. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we find the statute to be constitutional, but inapplicable in this case.
The statute at issue provides definitions as part of the state's child protective services statutes.[1] Subsection (9) defines how "harm" to a child's health or welfare can occur, including failure to provide "the child with supervision or guardianship by specific acts or omissions of a serious nature requiring the intervention of the department or the court." § 415.503(9)(e), Fla. Stat. (Supp. 1990).
This case grew out of the attempts of A.S., a single father, to have his name removed from the Department of Health and Rehabilitative Services (HRS) central abuse registry.[2] A.S. was cited for neglect for leaving his six-year-old son, A.S. Jr., home alone for a period of at least six hours on May 18, 1991.
*130 On the day in question, the child's mother was scheduled to take the boy for the weekend, but cancelled at the last minute. On the afternoon of May 18, A.S., a fish and wildlife officer, received information on the whereabouts of a suspected felon. Although he had made no other arrangements for child care, A.S. elected to go on a stakeout to apprehend the suspected felon. A.S. promised to check on the boy periodically and told him not to go outside or answer the door or telephone.
At around 10 p.m. neighbors became aware that the boy was home alone and was upset. The boy agreed to wait at the home of a neighbor until his father was contacted. The neighbors notified law enforcement and HRS. The child was returned to A.S.'s custody when he returned from the stakeout several hours later. A.S. later testified that he had left his son home alone on six previous occasions for periods of between one-half and one and a half hours.
A hearing officer recommended that the neglect report be expunged because "`the acts or omission of Respondent, A.S., were not of such a serious nature so as to require "the intervention of the Department or the Court,"'" as required by section 415.503(9)(e). A.S., 616 So.2d at 1205 (quoting hearing officer's recommended order). HRS adopted the hearing officer's findings of fact, but refused to expunge the record because "`[t]he findings of the Hearing Officer constitute a failure to supervise under Section 415.503(9)(e).'" Id. (quoting HRS final order).
The district court reversed the HRS final order, finding that section 415.503(9)(e) was
seriously and fatally lacking in definitive terms for its actionable occurrences, and we are not in the position to supply that lack of definition where no guidance is attempted by the legislature. "Serious nature," the qualifying term for the act charged, is not defined. Neither is the term "requiring the intervention of the department or the court" circumscribed by any definable boundaries.
Id. at 1206. The district court agreed with A.S. that "his acts or omissions have not been adequately shown to violate an ill defined or undefined standard of conduct." Id. at 1207. The district court also recommended that the legislature readdress and properly define the conduct it wishes to proscribe. Id.

I. Constitutionality of Statute
The district court analyzed the statute as if it were a criminal statute, focusing on whether the statute provided any "definable standard of conduct" for "those who may be charged with possible violations." Id. at 1206. While due process concerns of notice and warning are at issue when a penal sanction is possible, section 415.503(9)(e) does not impose criminal sanctions and is not designed to punish violators. In fact, the general public would not even be aware that a person's name has been placed on the central registry as such records are confidential and not subject to Florida's public records law. § 415.51(1)(a), Fla. Stat. (Supp. 1990) ("[A]ll records concerning reports of child abuse or neglect, including reports made to the central abuse registry and tracking system and all records generated as a result of such reports, shall be confidential and exempt from the provisions of s.119.07(1).").
Section 415.503(9)(e) is part of an administrative statute governing the operation of the central abuse registry and tracking system mandated by section 415.504. Cf. W.M. v. Department of Health & Rehab. Servs., 553 So.2d 274 (Fla. 1st DCA 1989) (concluding that section 415.504 is not a penal statute that is subject to the ex post facto doctrine), review denied, 564 So.2d 490 (Fla. 1990). Thus, the issue actually presented in this case is whether the statute provides a sufficiently detailed statement of the standards to be followed by HRS in carrying out the statutory child protection program and whether the standards reasonably relate to the purposes of that program.
The legislature specifically provided that sections 415.502-.514 are intended to
provide for comprehensive services for abused or neglected children found in the state by requiring that reports of each abused or neglected child be made to the Department of Health and Rehabilitative Services in an effort to prevent further *131 harm to the child or any other children living in the home and to preserve the family life of the parents and children, to the maximum extent possible, by enhancing the parental capacity for adequate child care.
§ 415.502, Fla. Stat. (1989). The statutes are designed to protect children by requiring that reports of neglect and abuse be filed with HRS. Section 415.504(1)(f), Florida Statutes (Supp. 1990), requires law enforcement officers to contact HRS even when there is a suspicion of child abuse or neglect. Upon receiving an oral or written report of either known or suspected child abuse or neglect, the registry and tracking system is required to determine whether an immediate onsite protective investigation is required and to contact the appropriate HRS district staff. § 415.504(4)(b), Fla. Stat. (Supp. 1990).
The central registry and tracking system also provides HRS district staff with "information on any previous report concerning a subject of the present report or any pertinent information relative to the present report or any noted earlier reports." § 415.504(4)(b), Fla. Stat. (Supp. 1990). The automated nature of the tracking system enables HRS to "[i]mmediately identify and locate prior reports or cases of child abuse or neglect." § 415.504(4)(a)1, Fla. Stat. (Supp. 1990). Through this system, HRS staff is not limited to the information contained in a manual file in a local office when making child protection decisions. For example, the tracking system can reveal a continuing pattern of abuse or neglect even if the parties move from one community to another.
The harm to the child contemplated by section 415.503(9)(e) is whether the parent's failure to provide supervision produces or is likely to produce grave consequences for the child. It would be impossible for the legislature to define with complete specificity all acts or omissions which are serious enough to fall within the ambit of the statute.[3] Whether or not particular conduct is covered by the statute must depend on a case-by-case determination. However, the legislature has ensured that a person's name shall not be lightly placed upon the registry by requiring the failure of supervision to be proved "by specific acts or omissions of a serious nature." § 415.503(9)(e). This definition provides sufficient standards to be followed by HRS in carrying out the statutory child protection program.
Furthermore, we find that those standards reasonably relate to the purposes of that program, namely preventing further harm to neglected children. In considering a similar Maryland statute, the United States Court of Appeals for the Fourth Circuit concluded that the state's retention of unsubstantiated and ruled-out child abuse investigation reports did not implicate the liberty interest in family privacy protected by the Due Process Clause. Hodge v. Jones, 31 F.3d 157, 166 (4th Cir.1994). The court further concluded that "the retention of these investigation reports continues to serve legitimate state interests in the welfare of children." Id. The court enumerated three legitimate interests served by retaining the reports: 1) a series of unsubstantiated entries for a given child may arouse suspicion of a pattern or practice of emotional and physical harm to a child, warranting further inquiry by the state; 2) retained records can also protect the individual whose record is kept by preventing repeated investigations when more than one person makes the same accusation; and 3) such records allow the state to defend itself in the event of a suit alleging inadequate investigation of a reported instance of child abuse. Id. The same legitimate interests are served by the statutes governing the operation of Florida's child abuse registry and tracking system.

II. Application of the Statute to the Instant Case
In determining the application of section 415.503(9)(e) to the instant case, we are governed by the principles of administrative *132 law. Judicial review of final agency action is governed by section 120.68, Florida Statutes (Supp. 1990). The scope of review for findings of fact is whether the facts are supported by competent, substantial evidence in the record. § 120.68(10), Fla. Stat. (Supp. 1990). However, the administrative construction of a statute by the agency charged with its administration should not be disregarded or overturned by a reviewing court except for most cogent reasons and unless clearly erroneous. ABC Liquors, Inc. v. Department of Business Regulation, 397 So.2d 696, 697 (Fla. 1st DCA 1981).
Notwithstanding this deference normally given administrative agencies, an agency's conclusions are not immune from judicial review. Utilizing the appropriate test, we agree with the hearing officer's conclusion that A.S.'s "`conduct does not rise to the level where he should be classified as the perpetrator of child neglect or abuse.'" A.S., 616 So.2d at 1205 (quoting hearing officer's recommended order). As the hearing officer's recommended order noted, A.S. showed care and concern for his son and did not abandon him. A.S.'s judgment to temporarily leave his six-year-old son alone with instructions when called to respond to a work-related emergency that was contemplated to be of short duration did not amount to neglect within the meaning of the statute. Therefore, we agree with the hearing officer's recommendation that A.S.'s name be expunged from the registry.
Based upon our determination that the statute is constitutional but inapplicable in this case, we affirm the result of the decision below but reverse the holding as to the constitutionality of the statute. We remand this cause for proceedings consistent with this opinion.
It is so ordered.
OVERTON, SHAW and KOGAN, JJ., and McDONALD, Senior Justice, concur.
GRIMES, C.J., concurs in part and dissents in part with an opinion.
HARDING, J., concurs in part and dissents in part with an opinion.
GRIMES, Chief Justice, concurring in part and dissenting in part.
This case involves application of section 415.503(9)(e), Florida Statutes (Supp. 1990), to undisputed factual circumstances. In reviewing interpretations or conclusions of law, the "administrative construction of a statute by the agency or body charged with its administration is entitled to great weight and will not be overturned unless clearly erroneous." Fort Pierce Utils. Auth. v. Florida Pub. Serv. Comm'n, 388 So.2d 1031, 1035 (Fla. 1980); see also ABC Liquors, Inc. v. Department of Business Regulation, 397 So.2d 696, 697 (Fla. 1st DCA 1981) (finding that contemporaneous construction placed upon statute by the officials charged with duty of executing it should not be disregarded or overturned by court except for most cogent reasons, and unless clearly erroneous). HRS is the agency charged with the administration of section 415.503(9)(e), and I cannot say that its interpretation of the statute is clearly erroneous.
I concur that the statute is constitutional, but dissent from the expungement of A.S.'s name from the registry.
HARDING, Justice, concurring in part and dissenting in part.
This is a sad day for the children of Florida. While I agree with the majority that the statute is constitutional, I strongly disagree with the majority's conclusion that the statute does not apply to this case.
As specified in both the recommended order of the hearing officer and the final order of HRS in this case, A.S. left his six-year-old child alone and unsupervised for over six hours from late afternoon to late at night. Although A.S. had promised to come by and check on the child periodically, the child became scared and upset after being left alone for a number of hours. The child was also concerned about the uncertainty of his father's return. In fact, the child was so upset that he aroused the neighbors' attention to his plight. The neighbors in turn notified law enforcement and HRS that the child had been left alone. A.S. could not be reached for several hours after the authorities were *133 notified. On at least six other occasions A.S. had let the child come home to an empty house after school. On those prior occasions, the child was unattended for periods of one-half hour to one and a half hours.
Contrary to the majority's assertion regarding instructions to the child, the hearing officer found that A.S. did not give his son "`adequate instructions on what to do in case of an emergency.'" A.S., 616 So.2d at 1205 (quoting hearing officer's recommended order). In addition, rather than this being a "work-related emergency" as set forth by the majority, majority op. at 132, the hearing officer found that A.S. "`elected to go on [the] stakeout and investigation.'" A.S., 616 So.2d at 1204 (quoting hearing officer's recommended order).
In concluding that the statute is not applicable in this case, the majority cites the hearing officer's finding that A.S. did not abandon his child. Majority op. at 131. The hearing officer also found that A.S. did not "`fail to provide [the child] with adequate food, clothing and shelter.'" A.S., 616 So.2d at 1205 (quoting hearing officer's recommended order). While the statute does provide that a child's health or welfare may be harmed through abandonment or failure to provide necessities, see section 415.503(9)(d), (f), Florida Statutes (1991), neither provision is at issue in this case. Instead, HRS determined that the circumstances of this case constituted a failure to supervise under subsection (9)(e).
I agree with HRS that the conduct in question, leaving a six-year old child home alone for an extended period of time, fell within the terms of the statute because there was the potential for significant harm to the child. See § 415.503(3), Fla. Stat. (1991) (child neglect means harm or threatened harm to a child's physical or mental health or welfare by the acts or omissions of a parent). However, even if I disagreed with HRS on this point, I still could not find such a determination to be "clearly erroneous." See Fort Pierce Utils. Auth. v. Florida Pub. Serv. Comm'n, 388 So.2d 1031, 1035 (Fla. 1980) ("[A]dministrative construction of a statute by the agency or body charged with its administration is entitled to great weight and will not be overturned unless clearly erroneous.").
I have real concern about the precedential effect of this decision. By removing A.S.'s name from the registry, this Court is, in effect, saying that anyone who leaves a six-year-old child alone for up to six hours need not worry about being placed on the neglect registry because such conduct clearly does not rise to the level of neglect. Majority op. at 131. Furthermore, anyone who repeatedly leaves a six-year-old child alone for up to six hours can also rest assured that HRS will not be able to establish a pattern of neglect because such conduct will never be made a part of the registry record. While I am thankful that the child in this case suffered no greater harm than fear and hysteria, I certainly hope that this Court would not require actual physical harm before a parent's name could be placed on the registry for neglect. I am also concerned that the majority opinion could be interpreted as finding that a work-related emergency justifies leaving a young child unsupervised.
I wonder if the majority's reluctance to apply the statute in this case has been influenced by the district court's characterization of the statute in terms of "violations" and "proscribed conduct." See A.S., 616 So.2d at 1206, 1207. If the majority is concerned that A.S. will suffer opprobrium for his poor judgment in this matter, I would remind the majority that it correctly noted that the registry records and reports are confidential and exempt from Florida's public record laws. Majority op. at 130; see also § 415.51(1)(a), Fla. Stat. (Supp. 1990). Rather than viewing inclusion on the registry as a punishment to the parent, I would call the majority's attention to its own conclusion that the registry can be a tool for determining whether or not there is a continuing pattern of neglect. Majority op. at 130-131.
In my judgment, this case sets a precedent that should haunt every person concerned about the outrage of children at risk for neglect in our state and nation. The children of this state deserve better.
NOTES
[1] See §§ 415.502-.514, Fla. Stat. (1989 & Supp. 1990).
[2] Although the section 415.504, Florida Statutes (Supp. 1990), designates the registry as the "central abuse registry and tracking system," the registry also contains reports of neglect and other maltreatment. HRS rules require that reports specify the "type [of] maltreatment alleged and the nature and extent of harm suffered by the victim." Fla. Admin. Code R. 10M-29.003(10)(d). The registry counselor must "identify all allegations of maltreatment and document supportive information in the report narrative as well as identify each allegation of maltreatment with a code in the ... registry." Fla. Admin. Code R. 10M-29.003(11)(c). Thus, even though A.S.'s name appears on the central abuse registry, the incident would be clearly designated as involving neglect.
[3] The legislature has used words of a similar general nature to define conduct in other statutes. See § 322.34(3), Fla. Stat. (1989) (driving with suspended license causing "serious" bodily injury); § 782.04(2), Fla. Stat. (1989) (unlawful killing by act "imminently dangerous" to another); § 784.05, Fla. Stat. (1989) (proscribing "culpable negligence"). It should be noted that each of these statutes is a criminal law, whereas section 415.503(9)(e) is not a criminal statute.