696 So.2d 430 (1997)
L.Y. and Melody, Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
Nos. 96-2384, 96-2438.
District Court of Appeal of Florida, Fourth District.
July 2, 1997.
*431 David S. Bazerman, Fort Lauderdale, for Appellant-L.Y.
James C. Blecke and Karen Gievers, Miami, for Appellant-Melody.
Carol A. Gart and Billi Pollack of Department of Children and Families, Fort Lauderdale, for appellee.
GLICKSTEIN, Judge.
This is an appeal from an order dismissing L.Y.'s dependency case and terminating the juvenile division's jurisdiction over her. While Melody was permitted by the trial court to intervene, there is no order of dismissal as to her case. Both have reached 18 years of age. Melody, who is incapacitated, intervened out of fear that L.Y.'s case will affect hers.
L.Y.'s appeal involves a judicial fight, not a legislative one, over the issue of judicial review of HRS Services to dependent children who reach 18, but continue to receive services from HRS. Unfortunately for L.Y., the fight is in the wrong arena as the legislature has not provided for judicial review of these services still being rendered to a now 18 year old, previously determined to be dependent, when that individual may not be incapacitated. The conscientious, concerned trial court properly held that the laws of Florida currently do not permit retention of continuing juvenile jurisdiction and review until the individual is 21. The California legislature has authorized the juvenile courts of that state to retain jurisdiction over a child found to be dependent until that individual attains the age of 21 years. See California Welfare and Institutions Code, § 303. The Florida legislature has not yet given the juvenile courts of this state a similar authorization.
Here, the trial judge very reluctantly entered its order, seeing no way around it, in light of the clear language of chapter 39, Florida Statutes. We reluctantly agree.
In our view, section 409.145(4), Florida Statutes, does not permit an interpretation argued by appellants whereby we would extend juvenile jurisdiction to L.Y. by reading it in para materia with section 39.40(2), Florida Statutes. Nor do sections 39.41(2)(a)10 and 39.45, Florida Statutes, change our view. Section 39.01(10), Florida Statutes, defines children as individuals under the age of 18. See also Gore v. Chapman, 143 Fla. 438, 196 So. 840 (1940); Simms v. State, Dep't of Health & Rehabilitative Servs., 641 So.2d 957 (Fla. 3d DCA), rev. denied, 649 So.2d 870 (Fla.1994).
Thus, we affirm, albeit without prejudice to L.Y.'s seeking appointment of a guardian pursuant to chapter 744, Florida Statutes, if there is some incapacity which could be shown.
Such petition should be considered by the same circuit judge who is familiar with L.Y.'s dependency proceeding. He is a circuit judge; and his assignment to the juvenile division should not be a barrier to his sitting by special assignment upon appropriate order of the chief judge. See In re Guardianship of Bentley, 342 So.2d 1045 (Fla. 4th DCA 1977); In the Interest of Wendy Dee Peterson, 364 So.2d 98 (Fla. 4th DCA 1978); Maugeri v. Plourde, 396 So.2d 1215 (Fla. 3d DCA 1981)
Section 744.369, Florida Statutes, provides for judicial review of guardian reports when a guardianship has been established pursuant to chapter 744. Any adult person may file a petition to determine that an individual is incapacitated. § 744.3201, Fla. Stat. If there is a determination that the individual is incapacitated a guardian may be appointed pursuant to section 744.344. The circuit court then reviews the condition of the ward annually, or more frequently *432 by petition, pursuant to sections 744.369 and 744.3715.
The court may appoint a guardian on its own motion if no petition for appointment of a guardian has been filed at the time of the order determining incapacity. § 744.3031, Fla. Stat.
Moreover, an 18-21 year old receiving benefits can seek judicial review of any final action of HRS that adversely affects that individual pursuant to the Administrative Procedure Act, section 120.68, Florida Statutes, which states:
(1) A party who is adversely affected by final agency action is entitled to judicial review....
(2) Except in matters for which judicial review by the Supreme Court is provided by law, all proceedings for review shall be instituted by filing a petition in the district court of appeal in the appellate district where the agency maintains its headquarters or where the party resides.
See Department of Health and Rehabilitative Servs. v. A.S., 648 So.2d 128 (Fla.1995) (holding review of final action of HRS is pursuant to section 120.68).
The intervenor, Melody, like L.Y., is a dependent child turned 18; however, she is incapacitated. While HRS says it is premature to decide her case as no effort has been made to terminate judicial review of the services being rendered to her, hopefully, it will not attempt to do so.
The Florida Supreme Court has said: "Courts are charged under the law with the duty and obligation of caring for infants and incompetents upon the theory that they are wards of the court." Turner v. Andrews, 143 Fla. 88, 196 So. 449, 450 (1940).
KLEIN and PARIENTE, JJ., concur.
PARIENTE, J., concurs specially with opinion.
PARIENTE, Judge, concurring specially.
I concur in Judge Glickstein's well-reasoned majority opinion. I write to address the concerns of the trial judge in this case regarding the consequences to foster children of terminating the juvenile court's jurisdiction, with the hope that the legislature will heed these concerns.
Unfortunately, as the majority notes, the plain language of subsection 39.40(2), Florida Statutes (1995), provides for juvenile court jurisdiction only until the child reaches age 18.[1] We are without authority to vary the clear language of unambiguous legislative enactments. See Holly v. Auld, 450 So. 2d 217, 219 (Fla.1984). This principle is "not a rule of grammar; it reflects the constitutional obligation of the judiciary to respect the separate powers of the legislature." State v. Brigham, 694 So.2d 793, 797 (Fla. 2d DCA 1997). Therefore, however desirable it would be to extend the jurisdiction of the juvenile court, the solution lies with the legislature.
I agree, however, with the argument advanced by L.Y. and Melody's conscientious counsel that juvenile court jurisdiction should be co-extensive with the obligation of the Department[2] to provide services to individuals who have previously been placed in foster care. As Judge Birken points out in his detailed order in L.Y.'s case, "[L.Y.] did not ask to be abused and she did not ask to be placed under the supervision of the Court and HRS."
It should be a simple matter for the legislature to amend subsection 39.40(2) to extend the jurisdiction of the juvenile court to be coextensive with the Department's responsibilities under Chapter 409. It is not only logical, *433 but also practical, that the juvenile judge who declared L.Y. and Melody to be dependent, and who has supervised their cases since that time, should continue with that supervision. This solution would also be cost-effective because the system for periodic review of each child's case is already in place. See § 39.41(2)(a)10 (providing for court review of the status of foster care children in independent living situations pursuant to section 39.453); § 39.453 (providing for continuing jurisdiction of juvenile court to review status of foster care children, generally). As Judge Karlan points out, it is the juvenile court judge who has the most familiarity and expertise with Chapter 39 and Chapter 409. See Order Granting Child's Motion for Court to Retain Jurisdiction in In re J.O., No. 92-16101 (Fla. 11th Cir. Ct. June 2, 1997).
For individuals like L.Y. and Melody, who have previously been committed to the legal custody of the Department for placement in foster care as dependent children, subsection 409.145(3)(a) authorizes the Department to "continue to provide the services of the children's foster care programs to individuals 18 to 21 years of age" so long as the individual is enrolled in an approved educational program. Once the Department begins to provide services, its obligation is not voluntary. Subsection 409.145(3)(b) mandates that the services continue so long as the individual complies with the statutory requirements.
Pursuant to subsection 409.165(4)(a), state foster care funds "shall be used to establish a continuum of an array of independent living services to assist adolescent foster children to develop skills that will contribute to a successful transition to adulthood." As part of the continuum of independent living services, the Department is mandated to establish an independent living program for minors 16 years of age or older to live "independent of the daily care and supervision of a responsible adult." § 409.165(4)(b). The goal of the extension of these services after age 18 is to assist the individual in attaining total independence from the Department's supervision.[3]
The trial judge's concern in this case is that there will be no effective oversight to ensure that the Department provides the services to L.Y. and Melody that it is obligated to provide. This concern has been echoed by Judge Karlan. See Order Granting Motion to Retain Jurisdiction in In re J.O., No. 92-16101 (Fla. 11th Cir. Ct. June 2, 1997).
The majority suggests a procedure, utilizing the guardianship statutes, whereby the juvenile judge could continue to supervise cases where the individual is shown to have some incapacity. While guardianships for those children who would qualify under Chapter 744 may be a solution to some of the cases, foster care children who do not qualify under Chapter 744 would remain unprotected.
The trial judge entered a detailed order in the case of L.Y., after stating that he "anguished over this case every day for many months." His concerns over the consequences of terminating juvenile court jurisdiction bear repeating here:
[L.Y.] was physically and allegedly sexually abused by her step-father. Her mother failed to accurately protect her from the abuse. She did not ask to be abused and she did not ask to be placed under the supervision of the Court and HRS.
....
This Court needs to express its concerns relative to this particular child and the manner in which she has previously been supervised, even with the Court and the guardian providing assistance and oversight, as well as the global problems which may occur as a result of this Order.
The most succinct way to review the past and express fear for the future for this child is to review the Guardian adlitem *434 report ... The guardian ad-litem expressed concerns that the child had three different caseworkers within the two months prior to the hearing. She also expressed concern that the child was losing her roommate in January 1996 and had no clue as to whether she could make it on her own without someone to share the rent. The guardian was concerned that the child was still taking GED classes and had not been tested through independent living for learning disabilities. The guardian was concerned that this child could be slipping through the system. The child stated to the guardian, "I guess I can live in a dumpster ... if I can't make it here." Finally the guardian was concerned that the new case manager was not aware that the child was experiencing this stress about their future.
The guardian had reported that the child had been in Independent Living since September of 1995, during which time she had three Independent Living workers, the last two of whom she had not yet met. The guardian reported that when she spoke with the child on November 20, 1995, the child seemed uncertain about her future and was not optimistic as reported in the status report by her caseworker dated October 19, 1995. The child was worried about being placed with someone she could trust and was not optimistic that a new roommate could be found. The guardian was of the opinion that because of the constant change in circumstances, this child should remain under the jurisdiction of the court.
This Court believes that there are significantly in excess of one hundred children who are in care beyond their eighteenth birthdays. Unless the guardian or some other party can bring to this Court's attention case law or statutory language which was not considered for this hearing, a large number of children in extended foster care will be subject to whatever decision HRS makes for them without any apparent oversight by anyone other than HRS.
There was a recent internal audit conducted by Quality Assurance Personnel within HRS analyzing the foster care system in District Ten. The cases reviewed were all cases over which the Court had jurisdiction. A copy of that report is attached to this Order and made a part of it. This Court is extremely concerned that if the Department's own auditors cite case after case where the Department has not met its mandated responsibilities toward children in care where there has been judicial oversight, what will happen to children when there is no judicial oversight? Will the Department be governed by budgetary matters and look for ways to force these children out of the system? What guarantees or safeguards will be implemented to see that this does not occur? These questions were generally raised during argument on the motion and no satisfactory answer has been provided.

....

There has been erosion of services made available to children who have been abused, abandoned and neglected. This Court is aware that for the last few years the legislature continuously cut back on monies available for children. Things have gotten so bad in District Ten that parents who have adopted special needs children have been advised that they may have to go months without receiving subsidy payments which were negotiated when they adopted these special needs children, and which were consideration for their adopting the children. If there was a group that this Court would have thought to be sacrosanct, it was adoptive parents of Special Needs Children. With these budgetary cuts in mind, are the children over eighteen, regardless of how well they may or may not be doing, the next targets? This Court fears that they are, and that a large number of children are going to be cut loose with no resources other than to resort to public assistance, crime, prostitution, and other degrading acts in order to survive. Did the people who may be cutting them loose adequately fulfill their responsibility to prepare these people for independence?
This Judge has been on the bench since 1982. This Judge has signed many Orders which disturbed him. This Judge has never *435 been asked to render an opinion which has upset him more than this Order. This Judge has sworn to follow the law whether he agrees with it or not.

This Court would hope that HRS in Tallahassee, the Guardian program and all responsible child advocates will band together to advocate amending the law in order to allow some independent oversight of the manner in which there is review for children who choose to remain in extended foster care beyond their eighteenth birthdays. If this review is not done by the Court, it should be done by an independent entity with an appellate procedure that insures that the children are provided due process.
(Emphasis supplied).
Although the doctrine of separation of powers prevents the judiciary from expanding its own jurisdiction, it is my hope that the separation is not so wide as to prevent the legislature from hearing the judicial concerns of Judges Birken and Karlan. While continued judicial supervision and monitoring may not be a panacea for L.Y. or Melody's problems, it will at least provide some additional measure of protection so that L.Y. and Melody do not slip through the systema protection that L.Y. and others similarly situated surely deserve.
NOTES
[1] For a comprehensive analysis supporting the contrary view that juvenile court jurisdiction continues past 18, see Judge Karlan's Order Granting Child's Motion for Court to Retain Jurisdiction in In re J.O., No. 92-16101 (Fla. 11th Cir. Ct. June 2, 1997). I agree with Judge Karlan that courts are obligated to construe related statutes in pari materia. However, in light of the plain language of subsection 39.40(2), Florida Statutes (1995), and the consistent definition of children in Chapter 39 as individuals under the age of 18, I cannot conclude that subsection 409.145(4) alone, which requires the court to "cooperate," confers jurisdiction beyond age 18.
[2] The Department of Health and Rehabilitative Services has been renamed the Department of Children & Families.
[3] The federal government, through the Independent Living Initiative, provides funding to the states to assist foster youth "who have attained age 16 in making the transition from foster care to independent living." 42 U.S.C.A. § 677(a)(1)(1988). 42 U.S.C.A. § 677(a)(2)(c) was amended in 1990 to enable foster youth to receive services until age 21, at the option of the state. The Department is mandated by both federal and state law to provide a foster care child with the independent living skills training, preceded by an assessment to determine the training which is needed and the services to be provided through the case plan. See 42 U.S.C.A. § 675(1)(c); § 409.165(4)(c), Fla. Stat. (1995); Fla. Admin. Code R. 10M-6.142.